BRODTMANN v. COOPER ET AL.

(February 25, 1929. Opinion and Decree.)

Sanders, Baldwin, Viosca & Haspel, of New Orleans, and Edward Dubuisson, of Opelousas, attorneys for plaintiff, appellee.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendants, appellants.

JONES, J. Plaintiff sues solidarily Cooper, a real estate broker, and the New Amsterdam Casualty Company, surety on his bond, under Act 236 of 1920, for $2000 of which $1500 is alleged to be an unreturned cash deposit on the purchase price of a lot of ground at Vincent and Lopez streets, in this city, for which title was never given, and the additional sum of $500 as attorney's fees.

Cooper answered admitting receipt of the $1500 from plaintiff, but denied it was the cash deposit on purchase price of lot. He averred that it had been paid on a contract for the erection of a residence on the lot at Vincent and Lopez streets, and that he had performed his part of the contract, but plaintiff had failed to do so. He admits amicable demand, but denies any putting in default and avers that title was never transferred to plaintiff because plaintiff failed to carry out his contract, thereby absolving him from all indebtedness.

The surety company answered admitting the signing of the bond, but denied all indebtedness.

There was judgment below as prayed for, and the surety company alone has appealed.

The original receipt, though offered in evidence, was lost. It was copied in the record as follows:

"April 27, 1923.

"Received from A. C. Brodtmann $1,-500.00 deposit on lot corner Lopez & Vincent.

"O. V. Cooper (Signed)."

Attached to the record as a part of the evidence are the following documents:

(1) A real estate contract, the pertinent parts of which read as follows:

"4—26 1923.

"O. V. Cooper Agent, New Orleans, La. "Dear Sir: I offer to buy the 60x120 Feet of Grounds Cor. Vincent and Lopez Square E & K and___or as per title for the sum of Twenty Nine Hundred ($2,900) Dollars, on terms of all cash, balance on _____ year's credit as per vendor's lien notes bearing _____% interest per annum, payable _____, secured by all usual and customary clauses.

"Purchaser to pay all cost of act of sale and $37.00 of Commission.
  *    *    *    *    *    *

"Joint acct. of A. C. Brodtmann and J. Modenbach, Jr.

"This offer to remain good and irrevocable through _____.
                "Jos. Modenbach Jr.

"_____

"We submit the above.
              "O. V. Cooper, Agent,

              "By _____

              "New Orleans, La. 4—26 1923.
"O. V. Cooper, Agent.

"I accept the above offer and agree to pay you $50.00 commission on purchase price.

              "A. J. Krelle."

The words "Joint acct. of A. C. Brodtmann and J. Modenbach, Jr.," appearing therein, are written in a different ink from that which is used in other parts of the same document.

On the back of this paper is the following:

"5—30—1923.

"I hereby transfer this offer to purchase the property described on reverse side to J. Palmisano, it being understood that there is to be erected a building on 60 feet of this ground for my account and a like building for A. Brodtmann on the other 60 ft., at a cost of $6350 for the buildings each in addition to the cost of ground and at completion is to be homesteaded for the full or total cost ($7850) less than $1500 paid at time lot was purchased.

"(Signed)      Jos. Modenbach, Jr."

(2)   Check of O. V. Cooper, real estate agent, for $660, dated May 30, 1923, made payable to the order of John Palmisano. On the bottom of this check is written the following words: "Advance on Lots Vincent & Lopez"—and on the back of the check, above the indorsement of J. Palmisano, is written, in the same hand: "Advance on lots Vincent & Lopez for account of Brodtmann and Modenbach."

(3)   A certified credit from the American Bank & Trust Company of this city, stating that Cooper's account had been charged with $240 because it had certified that day a check made payable by him to A. J. Krelle.

(4)   A blank sheet of paper on which the name "Joseph Modenbach, Jr.," is written five times.

(5)   A contract between O. V. Cooper and A. C. Brodtmann, of date June 1, 1923, in which Cooper agrees, in accordance with plans and specifications (attached) to be acknowledged and signed by both parties, to erect a building for $6,350, on the downtown woods corner of Vincent and Lopez streets. Attached to this contract are certain unsigned specifications for a double, one-story frame cottage, and also a rough, unsigned plan on which is written in lead pencil the name "Cooper," but there is nothing to show the architect or the location, and there is no date on either document.

The record shows that on April 27, 1923, the day Brodtmann gave Cooper $1,500, he was then engaged to the sister of the wife of Joseph Modenbach, Jr., and that he expected to and did marry her shortly thereafter. While Brodtmann testifies that Modenbach's contract for purchase of lot was entirely distinct from his, that his contract evidenced by the $1,500 receipt only covered the purchase price of the lot 60x60 feet at the corner of Vincent and Lopez, and that at the time he had absolutely no idea of building thereon, but was merely making an investment, his testimony is so improbable and so inconsistent with subsequent developments that we cannot give it full credence.

His testimony is corroborated by that of his brother-in-law, Joseph Modenbach, Jr., who likewise testifies that the transactions of the two were intended to be entirely separate, and that building was an afterthought. In support of this statement Modenbach says that the signature on the back of his contract, quoted in full above, was forged, and that the words "joint account of Brodtmann and J. Modenbach, Jr.," had been inserted after he signed the original. To test his accuracy on this point, he was asked to sign his name on a blank sheet of paper in court, and a careful examination of the three signatures convinces us that the signature on the back of the original document is far more like that on the front than those he wrote in court.

The record further shows that a lot 60x120 feet at the corner of Lopez and Vincent streets was transferred by the owner, Krelle, to contractor, John Palmisano, who erected two frame cottages on the lot, allowing 60 by 60 feet to each cot-

tage. The cost price of each of these two cottages was $7,850. Brodtmann and his wife and Modenbach and his family moved into these cottages and lived there for two or three months until October, 1923, when they moved out. In explanation of the abandonment of their houses, both Brodtmann and Modenbach say that they did so because they were told by Palmisano that the title to the ground was in his name, whereas they had thought that title to the land was already transferred to them. They give as additional grounds for their move the fact that the houses were improperly built, and failed to conform to the specifications in many important particulars, and Martin Manion, an attorney of this city, who represented Palmisano in his attempt to collect from Cooper and from Brodtmann, for the purchase price of these houses, says that Brodtmann abandoned the house because he found the purchase price too high for his means.

Cooper testifies that the transaction was joint between Brodtmann and Modenbach, and that the sole and only purpose of buying the lot was to have houses erected thereon for each party.

The documents quoted above, and the improbability of Brodtmann's and Modenbach's statements, convince us that the transaction was joint, and that the lot was purchased by the two men for the purpose of building adjoining houses thereon. Cooper claims, and we think the record sustains him in this, that he paid $900 of the amount deposited with him as follows: $660 to Palmisano, and $240 to Krelle. The balance of the deposit price of $290 on the lot would be covered by the $50 commission which was to be paid by Krelle, as shown in his quoted acceptance. He frankly admits that he spent the remaining $600 for his own purposes, and he seems to have recognized some indebtedness to Brodtmann, as he admits on the stand that he had placed Brodtmann on his bankruptcy schedules for a certain amount, though he does not fix that amount, and there is nothing to show it.

The attorney for the surety company argues that the transaction was intended to be a joint one between Cooper and Brodtmann. In this contention we agree with him.

He further argues that Brodtmann's loss was entirely due to his failure to live up to the building contract with Cooper, and that the company can be liable only for Cooper's failure to perform his real estate contract, and that to extend its liability in this case to cover the breach of a building contract would be a gross injustice. We do not find this contention valid, for the record convinces us that Cooper has failed to account for $600 of the amount deposited with him by Brodtmann, and that the contract, taken as a whole, was such a real estate contract as to come within the purview of the act.

The title of Act 236 of 1920 reads in part as follows:

"To regulate the mode and manner of conducting the affairs and business of Real Estate; * * * to require a bond for the conduct of the business of Real Estate. * * *"

Section (2) of this act defines a real estate broker as follows:

"That a real estate broker within the meaning of this Act is any person, firm, partnership, association, co-partnership or corporation, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy or negotiate the purchase or sale or exchange of real estate. * * *"

Section (16) reads in part as follows:

"That before any person * * * shall be permitted to open, engage in, * * * or conduct any real estate agency, or office or deal in real estate, or rent collecting as agent or broker, either in an office or otherwise, in the State of Louisiana, such person, * * * shall furnish bond with good and solvent surety in favor of the Governor of the State of Louisiana in the full sum and amount of one hundred dollars for every thousand population or fraction thereof of the parish in which the applicant proposes to do business as shown by the last available U. S. Census. * * *"

Section (17) provides that the Louisiana real estate board, authorized by the act, shall have the power to investigate complaints made by any person against a real estate broker, and shall have under subsection (f), the power to suspend or revoke any license at any time where the licensee has failed to account for any moneys coming into his hands which belonged to others, and, under subsection (g), for any conduct, whether specified therein or not, which constitutes dishonest dealings.

In Zerlin vs. Louisiana Real Estate Board, 158 La. 111, 103 So. 528, the Supreme Court held:

"The object and purposes of the act under consideration was to regulate the business of real estate brokers, and in order to protect the general public interest and welfare, to permit no one to engage in such a business except those who may be found after due and proper investigation to be honest, truthful, and of good reputation. No unfair or improper discrimination is made, and every person, whether a resident or nonresident of the state, who may possess the qualifications required, and who complies with the terms of the act, is permitted to engage in the business.

"That the statute comes within the legitimate exercise of the police power of the state we entertain no doubt.

"The creation of real estate boards, or commissions, and the licensing, regulation, and control and supervision of real estate agents and brokers is of very recent origin in this country. We were informed in oral argument of counsel at the bar that the law under consideration is similar in all essential respects to the statutes of California, Michigan, Tennessee, and perhaps a few other states we do not now recall."

It will be noted that the title of Act 236 of 1920 provides for the business of real estate, and that a broker is defined as one who "offers to * * * negotiate the purchase or * * * exchange of real estate," and that the bond is required from all those "who deal in the business of real estate." The plain purpose of the act, therefore, seems to be to extend the business of real estate agents, to widen the scope of their duties, and to promote the confidence of the public by requiring financial responsibility of all persons engaged in this occupation.

Unquestionably the contract in this case involved the purchase of real estate, and it also involved putting a building on that real estate, and it seems to us that the two purposes are so closely allied that they are properly and justly covered by the bond of a real estate broker's surety under this act. That it is public policy today to extend the scope and responsibility of the business of real estate agents is clearly shown by the above extracts from the decision of the Supreme Court in the Zerlin case. To limit the surety's liability on its bond to the extent argued by the able attorney of the surety company would be inconsistent with the spirit and purpose of the act, and within the modern trend of legislation on the subject. In 1928 the Legislature of this state

passed Act 269, requiring all real estate firms or corporations to file a certified copy of their bond with the clerk of court for every parish in which they did business.

Real estate agents, in their effort to secure purchasers, often agree to embellish property so as to make it more attractive to the prospective buyer, and they frequently erect houses as an additional method of promoting sales. The record shows in this case that Cooper and Palmisano had had many transactions, a number of which were presumably similar to this, and these two purposes in this contract are so closely bound together as to make the agreement, taken as a whole, come under the bond of the surety.

However, Cooper has accounted for $900 of this money, and the surety company is not liable for that. It should return to Brodtmann that portion—namely $600— which Cooper used illegally.

The statute does not provide for attorney fees, and there is clearly here no liability for that item. Judgment will therefore be amended to read as follows:

It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Alex C. Brodtmann, and against defendant O. V. Cooper in the full sum of $1,200, and in favor of plaintiff, Alex C. Brodtmann, against defendant New Amsterdam Casualty Company in the full sum of $600, with legal interest from April 27, 1923, until paid. Costs to be paid by appellee.