KING v. F. B. GREVEMBERG & SON, INC., ET AL.

No. 11,517

Orleans

LAIGHT v. F. B. GREVEMBERG & SON, INC., ET AL.

(January 13, 1930. Opinion and Decree.)
(March 24, 1930. Rehearing Refused. Original Decree Amended as to Quantum.)
(May 5, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Henry & Cooper and A. M. Suthon, of New Orleans, attorneys for plaintiffs, appellees.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellant, Federal Surety Co.

HIGGINS, J. These two cases present the same issue and were consolidated for the purpose of decision.

Plaintiffs, Laight and King, entered suits against the defendants, in solido, for the sum of $1,400.25 and the sum of $552.25, respectively, representing the balance of deposits which were made by plaintiffs with the defendant, F. B. Grevemberg & Son, Inc., for the purchase of real estate. The suits are against a real estate broker and the surety which signed the real estate broker's bond.

There was judgment in favor of plaintiffs for the amounts claimed, and only the surety company has appealed.

The record shows that, on March 8 and 9, 1926, plaintiffs made three deposits with F. B. Grevemberg & Son, Inc., a real estate brokerage company doing business in the city of New Orleans, aggregating the sum of $3,500. These deposits were not made on account of any particular purchase of property, but for the purpose of having the real estate brokerage company invest the money in real estate. The receipts are substantially alike, and one of them reads as follows:

"Received of Captain P. C. Laight the sum of $1,000.00 (One Thousand Dollars) to be invested in Real Estate by the firm of F. B. Grevemberg & Son, Inc., and said purchases to be made for the account of Roswell B. King under Power of Attorney of Roswell B. King held by F. B. Grevemberg, Jr.
"F. B. Grevemberg & Son, Inc.,
    "By (Signed) F. B. Grevemberg, Jr.
            "Vice-Pres. & Mgr."

Both plaintiffs had by authentic act appointed F. B. Grevemberg, Jr., as their agent and attorney in fact to make purchases of real estate for their account.

It is admitted by all parties that, at the time the deposits were made, the plaintiffs did not have the purchase of any particular real estate in view, but simply left it to the discretion of F. B. Grevemberg, Jr., their agent and attorney in fact, to purchase such property for their account as he might see fit, or none at all, at his discretion. Prior to making the deposits involved in this litigation, plaintiffs had speculated in real estate through F. B. Grevemberg, Jr., who made some money for them as a result of their real estate investments. These transactions took place during the boom in real estate in the city of New Orleans.

The record shows that F. B. Grevemberg & Son, Inc., was to receive a commission of 4 per cent. on the price of any real estate which might be purchased through it by F. B. Grevemberg, Jr., as agent for the account of plaintiffs.

In October, 1925, F. B. Grevemberg & Son, Inc., had agreed to buy the interest of Young & Harris and Felix Kuntz in two bonds for deed in which these parties had agreed to purchase certain lots located in the district known as "Lakeview" in New Orleans, through the New Orleans Land Company. In June, 1926, F. B. Grevemberg & Son, Inc., with the consent of F. B. Grevemberg, Jr., assigned these same bonds for deed to the plaintiffs and used a portion of the money which plaintiffs had deposited with the defendant real estate brokerage company to pay the purchase price for the interest of the vendors in the bonds for deed. The amount of funds deposited by plaintiffs with the real estate brokerage company was sufficient to pay for the five lots, but the defendant real estate brokerage company failed to even keep up the payments which should have been made in accordance with the provisions of the bonds for deed for the five lots of ground covered by them. When the payments due under the bonds for deed became in arrears, the New Orleans Land Company sued Laight, one of the plaintiffs, and through this means plaintiffs learned for the first time that the real estate brokerage company had not used the money for the purpose for which it had been deposited with it. Plaintiffs, then, with their own funds, paid the New Orleans Land Company in order to bring their payments up to date, and then filed these suits against the defendants.

The issue presented for decision here is whether or not a surety company, which has executed a real estate broker's bond in compliance with the terms and provisions of Act 236 of the General Assembly of the state of Louisiana for the year of 1920, is liable for the failure of the broker to properly account for funds deposited for investment in real estate, which is to be selected by the agent or attorney in fact for the investor or depositor, where no particular real estate has been selected at the time the deposit is made.

Plaintiffs contend that the bond furnished by the real estate broker under the provisions of Act 236 of 1920 protects plaintiffs from injury, damage, or loss that they may sustain as the result of any fraud, dishonesty, misrepresentation, or wrongful act by the agent or broker; that, as the defendant real estate company has failed to account for the moneys plaintiffs deposited with it in a real estate transaction or investment, and wrongfully failed to pay the purchase price on the real estate which was actually purchased, the injury, damage, or loss caused plaintiffs was done by the defendant real estate brokerage company in furtherance of its business, and that plaintiffs are entitled to recover from the surety company.

The defendants admit that F. B. Grevemberg & Son, Inc., was engaged in business as a real estate broker, as defined by Act 236 of 1920. It is contended, however, that it is not properly the function of a real estate broker to accept general deposits of money from its clients for future investment or speculation in real estate, and that, when F. B. Grevemberg & Son, Inc., undertook to handle such deposits as in the present case, it was acting outside

the scope of its business, and therefore the surety company is not liable on its bond, if the broker defaulted in its obligation to account. The relevant portion of the bond reads as follows:

"Therefore, if said F. B. Grevemberg & Son, Inc., shall well and truly carry out the objects and purposes for which said agency, office or business shall have been established and shall honestly conduct said business and shall pay all damages which may result from the actions of said F. B. Grevemberg & Son, Inc., as such Real Estate Broker or Agent, then this obligation shall be null and void, or, otherwise, said obligation shall remain in full effect to be enforced by any court of competent jurisdiction at the suit of any person or persons who may have been injured or damaged, all as provided by said Act No. 236 of the General Assembly of the State of Louisiana."

The title of Act 236 of 1920 reads in part as follows:

"To regulate the mode and manner of conducting the affairs and business of Real Estate; * * * to require a bond for the conduct of the business of Real Estate * * *."

Section (2) of this act defines a real estate broker as follows:

"That a real estate broker within the meaning of this Act is any person, firm, partnership, association, co-partnership or corporation, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiate the purchase or sale or exchange of real estate. * * *"

Section (16) reads in part as follows:

"That before any person * * * shall be permitted to open, engage in, * * * or conduct any real estate agency, or office or deal in real estate, or rent collecting, as agent or broker, either in an office or otherwise, in the state of Louisiana, such person, * * * shall furnish bond with good and solvent surety in favor of the Governor of the State of Louisiana in the full sum and amount of one hundred dollars for every thousand population or fraction thereof of the Parish in which the applicant proposes to do business as shown by the last available U. S. Census. * * *"

Section (17) provides that the Louisiana real estate board, authorized by the act, shall have the power to investigate complaints made by any person against a real estate broker, and shall have, under subsection (f), the power to suspend or revoke any license at any time where the licensee has failed to account for any moneys coming into his hands which belonged to others, and, under subsection (g), for any conduct, whether specified therein or not, which constitutes dishonest dealings.

Thus it will be seen that the act defines in general terms what shall constitute a real estate broker, but does not in detail state what are the proper functions and duties of such a broker. Whether or not an act of a real estate broker comes within the duties and functions of such broker as contemplated by the statute depends upon the interpretation to be placed upon the provisions of Act 236 of 1920.

As we analyze the facts of this case, it appears that the plaintiffs who were engaged in an occupation which carried them out of town, desired to invest certain money in real estate in the city of New Orleans. In their absence, one of the practical ways in which such a transaction could be handled would be to designate by authentic act an agent and attorney in fact to select the real estate to be purchased by them, and to accept title at the proper time. This was accomplished by appointing F. B. Grevemberg, Jr., as such agent and attorney in fact by proper power of attorney. The plaintiffs then depos-

ited with F. B. Grevemberg & Son, Inc., engaged in business as a real estate broker, the necessary money with which to effect the purchase of the property to be selected by plaintiffs' agent and attorney in fact, F. B. Grevemberg, Jr. The real estate brokerage company was to receive the regular commission for its services to be rendered in negotiating the purchase of the property which was selected by F. B. Grevemberg, Jr., for the account of plaintiffs. The agent and attorney in fact appears to have selected certain lots in "Lakeview," which were covered by bonds for deed, whereby the New Orleans Land Company had sold the property to Young & Harris and Felix Kuntz. At the time of the transfer of these bonds for deed to plaintiffs, F. B. Grevemberg & Son, Inc., was the assignee of them from Young & Harris and Felix Kuntz. Instead of F. B. Grevemberg & Son, Inc., then using the money deposited by plaintiffs for the purpose of paying the purchase price of the real estate purchased, and having title to the lots taken in plaintiffs' names through F. B. Grevemberg, Jr., acting as agent and attorney in fact for plaintiffs, Grevemberg & Son, Inc., wrongfully and illegally failed to use the money for the purpose for which it was deposited with them, and also failed to return the money to plaintiffs. The irregularity of the proceeding was made possible by the fact that F. B. Grevemberg, Jr., was an officer in the corporation. It thus appears that the transactions involved solely and only negotiations for the purchase of real estate which was actually purchased. The fact that plaintiffs acted through an agent or attorney in fact, in our opinion, is of no moment, and the transaction is just the same as if plaintiffs had selected the real estate and left a deposit with the defendant real estate brokerage company for the purpose of binding the sale, or to be paid as a part or the whole of the purchase price at the time the sale was passed.

It is to be noted that this is not a suit for damages for the negligent or incompetent act or judgment, or deliberate act or judgment of the real estate broker investing unwisely in certain property, but a suit for the return of the balance of the deposits which the broker never paid or expended for the purpose for which the deposit was made, i. e., to pay the purchase price of real estate purchased for plaintiffs' account.

In Zerlin vs. Louisiana Real Estate Board, 158 La. 111, 103 So. 528, 531, the Supreme Court held:

"The object and purpose of the act under consideration was to regulate the business of real estate brokers, and, in order to protect the general public interest and welfare, to permit no one to engage in such a business except those who may be found after due and proper investigation to be honest, truthful, and of good reputation."

The case of Brodtmann vs. Cooper et al., 11 La. App. 101, 120 So. 727, 729, appears to be decisive of the issues presented here. In that case the plaintiff sued solidarily the real estate broker and the surety on his bond under Act 236 of 1920, for $2,000, of which $1,500 was alleged to be the unreturned cash deposit on the purchase price of a lot of ground in the city of New Orleans for which title was never passed to plaintiff.

The real estate broker admitted receipt of the deposit, but contended that the money had been paid on account of a contract for the erection of a residence on the lot in question, and that he had carried out his part of the agreement, but that plaintiff had defaulted.

The surety company denied liability and contended that the company could only be held liable for the real estate broker's failure to perform his real estate contract, and that to extend the surety's liability to cover a breach of a building contract would be extending the provisions of Act 236 of 1920 and the real estate agent's bond beyond their terms and provisions.

This court said:

"It will be noted that the title of Act 236 of 1920 provides for the business of real estate, and that a broker is defined as one who 'offers to * * * negotiate the purchase or * * * exchange of real estate,' and that the bond is required from all those 'who deal in the business of real estate.' The plain purpose of the act, therefore, seems to be to extend the business of real estate agents, to widen the scope of their duties and to promote the confidence of the public by requiring financial responsibility of all persons engaged in this occupation.

"Unquestionably the contract in this case involved the purchase of real estate, and it also involved putting a building on that real estate, and it seems to us that the two purposes are so closely allied that they are properly and justly covered by the bond of a real estate broker's surety under this act. That it is public policy today to extend the scope and responsibility of the business of real estate agents is clearly shown by the above extracts from the decision of the Supreme Court in the Zerlin Case. To limit the surety's liability on its bond to the extent argued by the able attorney of the surety company would be inconsistent with the spirit and purpose of the act, and within the modern trend of legislation on the subject. In 1928 the Legislature of this state passed Act 269, requiring all real estate firms or corporations to file a certified copy of their bond with the clerk of court 'or every parish in which they did business.

"Real estate agents, in their effort to secure purchasers, often agree to embellish property so as to make it more attractive to the prospective buyer, and they frequently erect houses as an additional method of promoting sales. The record shows in this case that Cooper and Palmisano had had many transactions, a number of which were presumably similar to this, and these two purposes in this contract are so closely bound together as to make the agreement, taken as a whole, come under the bond of the surety."

In the case of The Texas Co. vs. Mattison et al., 12 La. App. 186, 125 So. 147, 148, this court held that the surety on a real estate agent or broker's bond, in accordance with Act 236 of 1920, was liable for the return of a deposit which had been made by the plaintiff as a prospective purchaser of certain real estate in the city of New Orleans, where the real estate agent or broker was to negotiate with the owner for the purchase of the property which the plaintiff desired. The real estate agent and broker failed to use the money for the purpose for which it was deposited, and was financially unable to return the deposit.

The surety company contended that the real estate agent or broker, in his individual capacity had attempted to negotiate the sale for his own account and in turn sell the property to the plaintiff, and therefore the transaction was not within the terms of the bond and the provisions of Act 236 of 1920.

The court held that, since the real estate agent and broker was employed by the plaintiff to negotiate the purchase for it and in its name, the desired property, that the surety on the bond was responsible for the broker's or agent's wrongful act in failing to return or use the deposit for the purpose for which it was made.

The court said:

"What is an agent? Webster says that an agent is 'one who acts for, or in the place of, another.' If an agent is one who acts for another, his duties are to do what the other might do if acting for himself, and the limit within which he may act is

the authority given him by the principal, and h.s bondsman is liable, provided the act which he is authorized to do is such an act as is ordinarily done in the conduct of that particular kind of agency. The act does state that a real estate agent or broker is one who buys or sells, or negotiates for the purchase or sale of real estate for another. Surely, if that other were acting for himself, he could receive a deposit or earnest money or a payment on account of the purchase price. If that other, the principal, instead of acting for himself employs a real estate agent to act for him, he thus authorizes the real estate agent to do any and all things necessary and customary to carry out the purposes for which he was employed. It is very evident, then, since the owner could himself have received the payment on account of the purchase price, it would not be contrary to custom, nor without the range of the contemplation of the surety, that the owner should authorize the agent to receive it for him. It appears quite evident that Mattison was employed by the Texas Company to negotiate for it and in its name for the purchase of the desired property. His authority was fixed and limited in the contract."

There was considerable testimony in the record by real estate experts as to what functions or duties properly fall within the business of a real estate agent or broker. Some of the experts felt that depositing money with brokers for future investment was outside of the customary duties of the real estate business as conducted in the city of New Orleans. But others felt that, while it was properly within the scope of the business, real estate agents and brokers did not customarily accept many transactions of this nature because of the unusual responsibility resulting from accepting such transactions. However, as the above-quoted provisions of Act 236 of 1920 convince us that the manner in which the transaction in the instant case was handled comes within the provisions of the act and the bond,

we do not feel that it is necessary to consider the evidence as to custom in our interpretation of the act.

Counsel for appellant have referred us to a portion of section 2 of Act 236 of 1920, which reads as follows:

"The provisions of this Act shall not apply to any person, firm, * * * or corporation, who, as owner or lessor, shall either individually or through an employee or representative not otherwise engaged in the real estate business perform any of the acts aforesaid with reference to property owned by them, nor shall the provisions of this Act apply to persons holding a duly executed power of attorney from the owner for the sale, leasing or rental of real estate."

They draw from this the conclusion that, as F. B. Grevemberg, Jr., was acting under a power of attorney, the act would have no application in this case. This language simply means that the section of the act in question shall not apply in such a way as to cover, as a real estate broker or salesman, the following persons: (1) Any person in a legal sense who individually, or through an employee who is not himself in the real estate business, buys or leases or sells, etc., property for his own account; (2) any person "holding a duly executed power of attorney from the owner for the sale, leasing or rental of real estate"; (3) an attorney at law or other judicially appointed representatives such as receiver, executor, etc.

The Legislature placed this section in the statute in order that attorneys at law, and representatives appointed by the court as executors and receivers, and the owners of real estate, "not otherwise engaged in the real estate business," would not have to take out a real estate agent's or broker's license in order to negotiate the sale or lease of real estate.

Since the filing of this suit, the plaintiff, Percy Charles Laight, died on the 4th of April, 1928, and his succession was opened in the Civil District Court for the parish of Orleans under the docket No. 181,601. In the succession proceedings Mrs. Sarah Ellen Evans, wife of William George Jackson, was recognized and placed in possession of the entire estate of the deceased, all of which fully appears by motion filed in this court on behalf of the said Mrs. Sarah Ellen Evans, wife of William George Jackson, asking that she be made a party plaintiff and appellee in the place and stead of Percy Charles Laight, deceased.

For the reasons assigned it is ordered, adjudged, and decreed that the judgments of the district court in these cases be, and they are hereby, affirmed; and it is further ordered, in the matter of Percy Charles Laight vs. Grevemberg & Son, Inc., et al., that Mrs. Sarah Ellen Evans, wife of William George Jackson, be substituted as party plaintiff in the place of Percy Charles Laight, deceased.

JANVIER, J., dissents.

ON APPLICATION FOR REHEARING

PER CURIAM. Our attention has been directed to errors in calculation committed by the judge of the lower court and followed by us in affirming his judgment. In order to correct the errors complained of, the judgments appealed from are amended so as to allow a credit in the Laight case of $106.80 and in the King case of $47.01.

The judgments appealed from will, therefore, be amended so as to award judgment of $505.24 to the plaintiff, Roswell E. King and to award judgment of $1,293.45 to the plaintiff Percy C. Laight, and, as thus amended, they are affirmed.

Application for rehearing refused.