MARGO v. CAMBON BROTHERS ET AL.

(March 10, 1930.  Opinion and Decree.)
(April 7, 1930.  Rehearing Refused.)
(June 4, 1930.  Writ of Certiorari and Review Refused by Supreme Court.)

Jos. Rosenberg, of New Orleans, attorney for plaintiff, appellee.

Milner & Porteous and P. M. Milner, of New Orleans, attorneys for Fidelity & Deposit Co. of Maryland, defendant, appellant.

E. M. Cahn and H. L. Hammet, of New Orleans, attorney for Cambon Bros. and Maurice C. Cambon, defendants, appellants.

JANVIER, J.  Petitioner alleges that she intrusted to Cambon Brothers, a commercial partnership engaged in business as real estate agents and brokers, $500, to be deposited by them on account of the purchase price of certain real estate, but that the agents did not apply the deposit as directed and have failed and refused to return the said sum to petitioner.

She asks for judgment against the partnership, against Maurice Cambon, the sole surviving member thereof, and against the legal representatives of Ferdinand Cambon and Sylvester J. Cambon, the two deceased members of the firm, and against Fidelity & Deposit Company of Maryland, as surety on the real estate broker's bond of the partnership and of those who formerly composed it.

The only defense which we deem worthy of consideration is that presented by the surety company, which is based on the re-

ceipt which was given to plaintiff when she deposited the said $500 with Cambon Brothers, and which receipt reads as follows:

"Received of Mrs. Annie Liuzza of 2330 Orleans Street, the sum of $500.00, same to be applied as her pro rata in the purchase of Mary Place in conjunction with the parties at present forming a company to take over said place. This money to be returned one year after date with interest at 7% if the property is not sold."

The surety company contends that the receipt shows that the money was not turned over to Cambon Brothers as real estate agents as a deposit to bind a sale, but was given them to be invested by them in the purchase for plaintiff's account of stock in a real estate company to be organized, and that since neither by custom, nor by Act 236 of 1920, is it among the duties of real estate agents to organize realty companies for their clients, nor to invest funds of clients therein, Cambon Brothers, in accepting the funds, were not acting as real estate agents, and that thus their surety is not liable for any breach of trust committed by them as individuals and not as real estate agents.

It is also contended on behalf of the surety that the concluding portion of the receipt constitutes a guaranty or agreement of indemnity against loss, and that it is not among the statutory duties of real estate brokers to agree to indemnify their clients, and that thus there is no liability in the surety; statutory sureties being liable only for such losses as result from the breach by their principals of obligations contemplated in the statute requiring the furnishing of the bond. Act No. 236 of 1920.

We see no merit in this latter defense, because the suit is not on the guaranty. No suit could have been maintained against the surety under this so-called guaranty, or agreement of indemnity; but we are unable to see why the inclusion by the broker in a contract to buy or to sell of a guaranty against loss should relieve the surety from liability if the broker misappropriates the funds deposited with him. In other words, if a broker, in order to induce a prospective purchaser to buy, agrees to indemnify the purchaser against loss, and if the deposit is made and the broker embezzles the deposit, his surety cannot escape liability under the bond on the plea that the broker should not have given the guaranty. The obligation imposed by the guaranty appears to us to be a matter separate and apart, so far as liability is concerned, from the obligation imposed by law upon the broker. If the broker violates the obligation imposed by law upon real estate agents, his surety is liable. If he violates the indemnity obligation imposed by contract, his statutory surety is not liable. Here it is contended that the broker violated the statutory obligation imposed by law upon real estate agents. If this is so, the surety is liable, regardless of whether or not there was included in the contract between the broker and the principal an indemnity agreement.

It is conceded that Cambon Brothers received the amount in question, and it is conceded that they have neither returned it nor invested it as directed. It is evident that the firm, the individual member, and the representatives of the deceased members are liable.

The surety, however, is not liable unless the principals, to-wit, Cambon Brothers and the individual members, received the money in their capacity as real estate agents or brokers and unless the statute to which we have referred, and in compliance with which the bond was given, contemplates

such acts as being within the scope of the duties of real estate brokers.

As we said in Brodtmann vs. Cooper, 11 La. App. 101, 120 So. 727, 729:

"It will be noted that the title of Act 236 of 1920 provides for the business of real estate, and that a broker is defined as one who 'offers to * * * negotiate the purchase or * * * exchange of real estate,' and that the bond is required from all those 'who deal in the business of real estate.' The plain purpose of the act, therefore, seems to be to extend the business of real estate agents, to widen the scope of their duties, and to promote the confidence of the public by requiring financial responsibility of all persons engaged in this occupation."

The receipt in question shows that the motive which actuated Mrs. Liuzza in handing the money to Cambon Brothers was her desire to purchase an interest in real estate. She no doubt did not know the distinction between purchasing an interest in real estate and buying stock in a company which, in turn, was to purchase the land.

There can be no doubt that she dealt with Cambon Brothers, because they were real estate agents and because they offered to assist her in buying an interest in the land in question.

The fact that the land was to be taken over by a company should not relieve the surety from liability, because the organization of the company was merely an incidental detail in the procedure of buying the land. In order to avoid individual liability persons often organize corporations and buy through them. Does this fact alter the status of the persons who negotiate the trade for the purchasers?

The object was the purchase of an interest in real estate. The agent who accepted the money for the purpose was acting within the scope of the usual duties of a real estate agent, and a breach of trust in such a matter renders the surety liable for the loss.

We believe that the judgment appealed from is correct.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellee.