**WILLIAMS et al. v. ALLIANCE CASUALTY CO. et al.***

No. 14471.

Court of Appeal of Louisiana. Orleans.

March 27, 1933.

Wm. H. Talbot, of New Orleans, for appellants.

Henry & Cooper, of New Orleans, for appellees.

JANVIER, Judge.

Plaintiffs allege that they have been defrauded by Frank B. Hill, a real estate broker, and they seek a solidary judgment against Hill and his surety, Alliance Casualty Company.

They appeal from a judgment maintaining an exception of no cause of action filed by Alliance Casualty Company and dismissing the suit as to that defendant.

It is charged that during the year 1932 the said Hill was engaged in business as a real estate broker, and that, in qualifying to engage in such business, in compliance with the provisions of Act No. 236 of 1920, he furnished bond in the sum of $10,000, and that Alliance Casualty Company signed said bond as surety.

Plaintiffs aver that they desired to purchase certain real estate in a so-called subdivision near the city limits of New Orleans known as "Country Club Gardens," and that they made an agreement under which the said Hill undertook to sell, and they agreed to buy, the said property. They aver that they deposited with the said Hill and in connection with the said contract the sum of $1,066.95; that the said Hill was not the owner of the property, but was, in fact, the broker of the true owners, and that the agreement between the true owners and Hill, while it purported to be an option under which Hill was given the right to acquire any or all of the lots of ground in the said subdivision, was in reality only an agreement under which Hill was to sell the said lots as broker for the real owners; that the said Hill has absconded with the said sum placed with him, to wit, $1,066.95; that the owners of the property have become bankrupt; that no title can be made to petitioners; and that they are entitled to recover the amount of their loss either from Hill or from Alliance Casualty Company, his surety.

By exception Alliance Casualty Company contends that the petition itself and the documents referred to in it, to wit, the contract between plaintiffs and Hill and the contract between Hill and the owners of the property, show that Hill, when he made the contract with plaintiff, was not acting as broker for some one else, but was merely contracting to sell his own property, or, to be more exact, was agreeing to sell property which he had an option to buy, and that therefore the provisions of Act No. 236 of 1920 have no application because reference to section 2 of the said statute shows that it does not apply "to any person, firm, partnership, associa-

tion, co-partnership or corporation, who, as owner or lessor, shall either individually or through an employee or representative not otherwise engaged in the real estate business perform any of the acts aforesaid with reference to property owned by them."

The first point made by exceptor is that the contract, copy of which is alleged to be attached to the petition, and under which plaintiffs charged that Hill agreed to sell them the lots in question, is, in fact, no contract at all, because it does not bear the signature of Hill or of any one purporting to represent him, and because it is not acknowledged before a notary public in the presence of two witnesses. In connection with this latter contention, our attention is directed to article 2440 of the Revised Civil Code, under which it is provided that sales of immovable property shall be made by authentic act or by act under private signature, and to the many decisions, notably Frederick v. Vautrain, 6 La. App. 565, in which it has been held that "testimonial proof to show an oral agreement to buy real estate is inadmissible."

It is argued that, if the said agreement is not in authentic form, then it is not enforceable as an agreement affecting the title to real estate, and hence no oral proof concerning the said contract can be offered.

This argument, however, overlooks entirely the fact that it is not the title to the real estate that plaintiffs seek to affect. On the contrary, and to their sorrow, they concede that there is no way in which they can obtain title. All that they seek is the return of the cash which they allege they paid to Hill, and in Villemeur v. Woodward, 171 La. 831, 132 So. 361, our Supreme Court held that not the title to the property itself but only the money deposited is involved in such litigation.

In order to recover back from a real estate broker or from his bondsman cash fraudulently obtained by that broker, the plaintiffs defrauded are not under the duty of proving that they were defrauded by means of a written contract which could have been legally enforced, or that there was a written contract in authentic form or, in fact, that there was any written contract at all.

A plaintiff who alleges and can prove that, as a result of oral misrepresentation made by a broker, he has been defrauded, can recover from such broker or from his bondsman.

Exceptor maintains that the contract between Hill, the alleged broker, and Country Club Gardens, the owner of the subdivision, shows on its face that it was an option under which Hill was given the right to buy any and all lots in the subdivision, and that therefore, when Hill contracted with plaintiffs to sell to them certain lots in that subdivision, he was contracting to sell something which in legal effect was his, and that a person, although he may be otherwise engaged in the real estate business, in contracting to sell his own property, is not acting as a broker for others, and that thus his bondsman is not liable for any misdeeds committed while so acting with reference to his own property.

Plaintiffs meet this argument with three counter arguments: First, that the act specifically applies to such a person who, although he may be selling his own property, is also otherwise engaged in the real estate business; second, that the particular exception set forth in section 2 of the act which provides that the statute does not apply to one selling his own property refers to one who is actually the owner and not to one who merely has an option to buy; third, that the contract between Hill and Country Club Gardens, although having the general form and containing the usual terminology of an option agreement, is, in fact, only an agency contract under which Hill was to·sell the property for the real owners.

With the first counter argument of plaintiffs we are unable to agree, and we believe that it is based on a slight misunderstanding of a portion of section 2 of the act. Plaintiffs argue that the exception set forth in the act under which a person may, without running afoul of the provisions of the act, sell his own property, does not apply to a real estate agent who may be dealing in his own property, because, so plaintiffs assert, the said exception is limited to persons "not otherwise engaged in the real estate business," but a careful reading of that section, and especially of that particular clause, shows that the words "not otherwise engaged in the real estate business" refer not to the person, firm, partnership, etc., who may own the property, but only to the employee or representative employed to sell the property. Whatever may have been the purpose of the framers of the act, and even though it may have been their intention to prevent a real estate agent from selling his own property without complying with the provisions of the act, they certainly did not express that intention in the particular section to which we have referred, and, as we interpret that section, a real estate agent who, himself, sells his own property, may do so without complying with the provisions of the act of 1920.

We find it unnecessary to decide whether the exception set forth and just above discussed is limited to one who is actually the owner as distinguished from one who has an option to buy. The ·charge is that there was not a bona fide option, and we are therefore not confronted with the question which might be presented if it were conceded that

the option was bona fide, and that one who sells an option must qualify under the general provisions of the statute and is not within the exception made to one who, as owner, sells his own property.

■ But with the third counter argument plaintiffs are more fortunate, and we agree that, in whatever form a real estate broker may clothe his contract with a real estate owner, if the purpose is that he shall dispose of the property for the owner, his obligation to the public is governed by the statute in question, and his bondsman is liable for his misdeeds; otherwise it would be a simple matter to circumvent the purpose for which the statute was enacted and to adopt the use of option forms or other such schemes, and thus avoid compliance with the said statute.

■ Of course, on the other hand, the mere fact that plaintiffs charge that the contract between the property owners and Hill is not an option contract as it purports to be, but is in reality an agreement by which Hill is employed as a real estate broker, does not give to the contract that character. But their assertion that the method employed is a subterfuge and was adopted for improper purposes, and their allegation that, as a result, both Hill and his bondsman are liable for "the money fraudulently secured and appropriated by said Frank B. Hill," is sufficient to give to plaintiffs the right to be heard and the right to submit proof to substantiate their charges.

We find in that contract much of interest and much that does not ordinarily appear in option contracts. For instance, paragraph 8 reads as follows: "If on June 30, 1931, said Hill company shall not have been successful in selling all of the above described lots, but shall have sold fifty per cent or more thereof, it shall be entitled, at its option, to an extension of this agreement, upon the same terms and conditions, up to and inclusive of December 31, 1931. If on December 31, 1931, said Hill Company shall have sold half of the number of lots remaining unsold on June 30, 1931, it shall then be entitled at its option, to an extension of this agreement upon the same terms and conditions for an additional year."

If the contract is strictly an option to buy, then we find it difficult to see what interest the owners have in Hill's selling any of the lots to others. We find it hard to believe that the owners were not, in fact, much concerned with Hill's success in disposing of the property. The right to an extension of the said agreement is made to depend, not upon whether or not Hill decides to buy, but upon whether he is able to sell.

We further note that in paying for the said property it was understood that Hill might deliver to the real owners of the property either his own notes or such notes as he might obtain from those to whom he might sell property.

■ Exceptor also contends that the written document, copy of which is attached to the petition, and in connection with which plaintiffs allege that they made the deposit with Hill, on its face shows that no such deposit was made since the blank space provided in the contract contains no figures to show the amount of the deposit. But a careful reading of the petition shows that the amount deposited was not the sum which counsel for the exceptor believes should have been inserted in that blank space, but was the amount which was to represent the first payment on the purchase price. We find, then, that, if the document to which the exceptor objects be construed as a valid contract, plaintiffs have alleged that they made a contract calling for a first payment to Hill, and that they later made the first payment. Surely they can prove this by parol. If the contract is so informal as to be an absolute nullity, as exceptor contends, then we find that plaintiffs have made the allegation that they turned over to Hill in his capacity as broker the sum of money sued for, and that Hill has absconded. Surely they should be permitted to prove this.

■ We have given much consideration to the contention that, regardless of the possible interpretation of the contract between Hill and the owners as one of agency or mandate, plaintiffs should be bound by the contract which they allege that they entered into with Hill, and which plainly designates Hill as the owner, and we note particularly the argument that they should not be heard to say that their own contract is not what it purports to be.

We think that, in view of the entire petition, we should not limit our study to the one contract, and we are unable while considering one from preventing our minds from adverting to the other, and, when we consider the two contracts simultaneously, and also the allegations of the petition, we reach the conclusion that the charge is that one who was but an agent adopted for his own purposes a subterfuge under which he undertook to execute the mandate. If this is true, then the loss of which plaintiffs complain resulted from the fact that Hill, who was employed as a real estate broker, undertook to carry out the purpose for which he was employed, and did so by adopting a subterfuge. If he did this, and plaintiffs were defrauded, then the loss cannot be said to result solely from the contract under which they agreed to purchase. It was also contributed to by the contract under which Hill—if plaintiffs' allegations be true—was really employed as agent.

If a real estate broker, licensed as such, chooses to conduct his business through the medium of options, even if the options be bona fide, a very interesting question would be presented if one defrauded by such method should seek recovery from the surety of such broker. But we do not find it necessary here to say that in such case there would be liability, because all that we are now called upon to decide is whether one who alleges that the option method was adopted in bad faith and with intent to defraud should be afforded an opportunity to prove his allegations and to show that he has been defrauded thereby.

It is maintained by exceptor that, since the bond was furnished under the statute, only such transactions are protected as are within the contemplation of the statute as being within the scope of operations of a real estate broker, and that, since a real estate broker is defined in the statute as one who, in the various transactions set forth, acts for others, the particular transaction out of which this suit arose is not within the protection of the bond, since Hill was acting for himself and not for others. Plaintiffs, however, charge that the contract, though in the general form of an option, is, in fact, a sales agency contract, and, since it is not impossible that such an interpretation may be placed upon it, they should be afforded an opportunity to prove their charges.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that this matter be remanded to the lower court for further proceedings according to law and not inconsistent with the views herein expressed.

Reversed and remanded.