## ZELLER v. CHETTA et al. *
### No. 14338.

Court of Appeal of Louisiana. Orleans.
May 22, 1933.

Samuel J. Tennant, Jr., of New Orleans, for appellant.

Milling, Godchaux, Seal & Milling, and M. Truman Woodward, Jr., all of New Orleans, for appellees.

HIGGINS, Judge.

Plaintiff brought this action against Louis Chetta and Maurice M. Jones, as members of the dissolved partnership of Chetta & Jones, real estate brokers, and also against the Standard Accident Insurance Company, as surety on the bond furnished by that firm, under the provisions of Act No. 236 of 1920, for the recovery of $1,000 alleged to have been deposited by the plaintiff with the said real estate brokers in connection with the purchase of real estate on August 28, 1926.

The defendants filed general denials, but, on the trial of the case on its merits, over the objection of the plaintiff, defendants introduced evidence tending to establish the following defenses:

(1) That the plaintiff was not dealing with the real estate firm of Chetta & Jones in reference to the transaction in question, but with various other individuals, including Mr. Chetta and Mr. Jones, in the formation of a syndicate to speculate in real estate by purchasing Esperanza Plantation.

(2) That the insurance company was the surety on the bond for the firm of Chetta & Jones, real estate brokers, and, as the plaintiff dealt with Mr. Chetta and Mr. Jones and others as individuals with reference to the contract in controversy, the bond furnished did not cover the alleged transaction.

There was judgment in favor of the defendants dismissing the suit, and the plaintiff has appealed.

Chetta & Jones were duly licensed and qualified real estate brokers in accordance with the provisions of Act No. 236 of 1920 and had handled investments in immovable property for plaintiff on several occasions. On August 26, 1926, the plaintiff deposited with this real estate firm a certain stock certificate

of the Conservative Homestead Association for ten shares of its capital stock, which plaintiff indorsed in blank. Chetta & Jones completed the indorsement and then had issued to them, by the homestead in payment of the stock certificate, a check for the sum of $1,000. This check, dated August 31, 1926, was deposited to the account of Chetta & Jones. On September 3, 1926, Chetta & Jones, in a letter to the plaintiff, acknowledged receipt of this amount, as cash, together with plaintiff's note for the sum of $1,500, on account of her subscription of $2,500 to Esperanza syndicate.

It appears that Louis Chetta and Maurice M. Jones and Dr. E. F. Solerno had signed a contract with J. S. Webb to purchase Esperanza Plantation for the sum of $80,000 on April 29, 1926. These parties then, on August 15, 1926, drew up what is called a syndicate agreement naming themselves as syndicate managers and solicited subscriptions for the purpose of purchasing the plantation for the sum of $120,000, out of which the syndicate managers were to be reimbursed the sum of $1,000 "for all expenses incurred by them in connection herewith." Plaintiff signed this document as a subscriber. There is another syndicate agreement dated January 15, 1927, which is identical with the other agreement, except that the amount of expenses is stated to be $8,000, instead of $1,000. There is also in evidence a document which shows that the managers proposed to incorporate the Esperanza Land & Development Company, Inc., for the purpose of purchasing Esperanza Plantation for $150,000, with a capital stock of $200,000, naming Chetta & Jones, licensed and bonded real estate brokers, as fiscal agents and trustees for the collection and disbursement of all moneys until the completion of the organization, and also appointing them as exclusive selling agents for the sale of the company's property.

The syndicate contracts contain this provision: "This agreement shall become operative and effective without any notice whatsoever when $95,000.00 shall have been subscribed by the syndicate members."

These agreements also contain a stipulation that each subscriber shall deposit 10 per cent. of his subscription in cash and give his note for the balance payable in ninety days, with 8 per cent. interest. The syndicate agreements further provide for the organization of a corporation to take title to the said Esperanza Plantation.

The evidence shows that the three syndicate managers subscribed to the extent of $5,000 each, but that none of them made the 10 per cent. deposit, and that this requirement was not exacted of several other parties who signed the syndicate agreements.

The syndicate contracts never became effective because $95,000 was never subscribed, with the result that title to the property was never taken in the name of the syndicate or the proposed corporation, and the proposition failed. Plaintiff complied with her part of the agreement and in no way defaulted.

■ It is unnecessary to discuss the question of whether defendants had the right to introduce evidence tending to show that the plaintiff dealt with Mr. Chetta and Mr. Jones as individuals with reference to the syndicate, because, during the trial of the case, while Mr. Jones was under cross-examination, the plaintiff elicited from him some information with reference to this subject, and then, by subpoena duces tecum, secured the syndicate contracts, documents, and papers in connection therewith and filed them all in evidence. Whatever right the plaintiff had by virtue of the objection to any evidence as to the syndicate was thereby waived when these documents were introduced.

While Mr. Chetta and Mr. Jones state that they were acting as individuals and not in their capacity as real estate brokers, the evidence shows that they signed what purported to be a contract with Mr. Webb to purchase the plantation for $80,000 and then prevailed upon him to give them another document in which it was stated that the purchase price was to be $150,000, and then still another paper in which it was stated that, whereas they signed the contract for $150,000 as representing the purchase price, the true amount was $80,000. This document could not have been given for any other purpose except to mislead the prospects who were solicited to purchase an interest in the Esperanza Plantation. Messrs. Chetta and Jones admit that the difference between $80,000 and $120,000 or $150,000, which they proposed to realize from the sale of the plantation, was to represent their profit, or commission. Under the circumstances we feel that little credence can be placed in their testimony.

■ In view of the authorities on this subject, we are of the opinion that plaintiff dealt with Chetta & Jones, real estate brokers, because the $1,000 was received in connection with the purchase of immovable property by the firm and deposited to its account and was never paid over to the syndicate. In fact, the proposed syndicate never came into legal existence, the amount of subscriptions necessary to effect that result not having been obtained. One of the documents shows that Chetta & Jones, in their capacity as licensed and bonded real estate brokers, were appointed fiscal agents of the parties to the agreement and also the proposed corporation, as well as trustee for the collection and disbursement of the moneys until the organization was completed. Texas Company v. Mattison, 12 La. App. 186, 125 So. 147; Brodtmann v. Cooper, 11 La. App. 101, 120 So. 727; King v. Grevemberg & Son, Inc., 13 La. App. 162, 127 So. 642; Williams et al. v.

Alliance Casualty Co. et al. (La. App.) 147 So. 96.

■ The defense of the bonding company must, likewise, fail due to the fact that we have reached the conclusion that the plaintiff had dealt with Chetta & Jones as real estate brokers. The firm received her money in connection with the purchase of real estate and refused to return it to her, although the sale never took place.

■ The evidence shows that the bonding company refused to pay the claim within thirty days, although it received writt. a amicable demand or notice thereof. Under the provisions of Act No. 225 of 1918 it is liable for 10 per cent. additional as attorney's fees, which is also allowed.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of Miss Anna M. Zeller, and against the defendants Louis Chetta and Maurice M. Jones, and the Standard Accident Insurance Company of Detroit, Mich., in solido, for the sum of $1,000, with legal interest from June 8, 1927, until paid, and 10 per cent. additional against the said surety on the bond, Standard Accident Insurance Company, for attorney's fees; and for all costs.

Reversed.