(103 So. 528)

No. 26881.

### ZERLIN v. LOUISIANA REAL ESTATE BOARD.

(March 2, 1925.   Rehearing Denied March 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Brokers 3—Irregularity in proceeding before real estate board not considered.**

In view of express power of courts, under Act No. 236 of 1920, to review all questions of fact and law in any final decision of real estate board, alleged irregularity of proceedings and hearing before board will not be considered.

2. **Brokers 3—False denial of applicant for license of pendency of criminal charge held to justify revocation of license.**

Where applicant for license as real estate broker denied pendency of any criminal charge, in answer to questions of real estate board, such denial, being untrue, *held* to justify revocation of license, notwithstanding he may have believed that the prosecution then pending against him had been abandoned.

3. **Brokers 3—Broker's license may be revoked or refused for dishonesty or untruthfulness.**

Under provisions of Act No. 236 of 1920, which authorizes real estate board to require and procure satisfactory proof of honesty, truthfulness, and reputation of applicant for real estate broker's license, such license, where issued to one who is dishonest, untruthful, or of bad reputation, may be revoked or refused.

4. **Licenses 7(1)—Constitutional law 206 (4), 287—Statute regulating issuance of broker's license held within police power of state.**

Act No. 236 of 1920, regulating issuance of brokers' licenses, *held* not in violation of due process provisions of state Constitution, or Const. U. S. Amend. 14, or provisions of latter as to privileges and immunities of United States citizens, but valid exercise of inherent police power of state.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; W. Carruth Jones, Judge.

Suit by George Zerlin against the Louisiana Real Estate Board, to annul its action in rescinding a license and to have license reissued or reinstated.   From judgment rejecting plaintiff's demand, he appeals.   Affirmed.

Michel Provosty, of New Orleans, for appellant.

A. D. Danziger, of New Orleans, for appellee.

J. Fair Hardin, of Shreveport, and Nathan William MacChesney, of Chicago, Ill., amici curiæ.

THOMPSON, J.   A license was issued to the plaintiff by the defendant board to engage in the business of real estate broker and agent in the city of New Orleans, but was recalled and revoked by the said board for the reason that the plaintiff had made a

false answer to one of the questions propounded to him by the said board in its inquiry into the fitness and qualifications of the applicant for the license.

The object of this suit is to annul the action of the board and to have plaintiff's license reissued or reinstated.

It is charged in the petition that the action of the board in rescinding the license was null and void because plaintiff was not legally notified of the intention of the said board to hold a trial or hearing on the question of whether the license should be revoked or not; that plaintiff was not informed of the nature of the charge against him, and was not given the opportunity of employing counsel; that the notice served on plaintiff was not timely nor legally sufficient; and that all the proceedings leading up to and including the hearing before the board were illegal, contrary to law, and were not due process of law.

In the alternative, it is alleged that Act 236 of 1920 is unconstitutional in that it violates certain provisions of the Constitutions of 1898 and of 1913; that the said act is also repugnant to the provisions of the Fourteenth Amendment to the Constitution of the United States, in that the said act abridges the privileges and immunities of the citizens of the United States, and deprives petitioner of his property without due process of law, and that the act is an arbitrary, unreasonable, and unjustifiable exercise of the police power of the state.

The demand of the plaintiff was rejected in the court below, and he has appealed.

[1] The statute under which the plaintiff's license was issued and thereafter revoked expressly confers upon the courts the authority to review all questions of fact and of law in any final decision of the real estate board. It is unnecessary, therefore, to inquire into the want or sufficiency of the notice, or of the illegality and irregularity of the proceedings and hearing before the said board.

We shall therefore pretermit all such questions and come directly to the vital questions: (1) As to whether there was sufficient legal cause for revoking the plaintiff's license; and (2) whether the act creating the real estate board is unconstitutional for the reasons alleged by the plaintiff.

[2] One of the questions propounded to the plaintiff in connection with his application for a license as real estate broker was:

"Have you ever been convicted of any criminal offense, or is there any criminal charge pending against you, or has any member of your firm or any officer of your association or corporation ever been so convicted, prosecuted, or indicted?"

The answer of the plaintiff was, "No," without any explanation or modification.

The testimony shows that at the time the answer was made there was pending in the criminal district court of the parish of Orleans an information filed by the district attorney, charging the said Zerlin with the crime of grand larceny, to which charge, it appears, the said Zerlin, after the answer made by him to the question above referred to, entered a plea of guilty and was given by the court a suspended sentence at hard labor in the penitentiary.

The plaintiff endeavors to justify or excuse his answer, and thereby in a way to sustain its truthfulness, by claiming that he had been informed, or at least was under the impression, that the charge against him had been withdrawn or dropped. There is evidence going to show that the attorneys for the company whose property Zerlin was accused of stealing were willing to forego the further prosecution, so far as they were concerned. There is also evidence that Zerlin's attorney had informed him that he thought the prosecution would be dropped. The fact remains, however, that the prosecuting officer had never agreed to abandon

the prosecution and had never authorized any information to that effect to be imparted to Zerlin.

The answer which Zerlin gave to the question was palpably and knowingly false. It was both a deliberate misrepresentation as to facts and a concealment of facts which the real estate board had a right to know. The question propounded not only sought information as to whether the applicant had been convicted or if there was any criminal charge pending against him, but it sought also information as to whether any member of his firm had been convicted, prosecuted, or indicted.

The failure of plaintiff to give all the facts with reference to the charge, whether he believed the charge had been withdrawn or not, was plainly misleading and amounted to a concealment. He should have been frank in his answer and ought to have made a clean breast of the matter. He should have told "the truth, the whole truth, and nothing but the truth." Had he done so, the board undoubtedly would have refused him a license. It is not unfair to assume that his purpose was to withhold from the board information the board was entitled to know and which he was bound to know, if given by him, would have resulted in the rejection of his application.

[3] The real estate board is a state wide functionary, and was created by and organized under the provisions of Act 236 of 1920.

Section 1 of the act provides that it shall be unlawful for any person from and after January 1, 1921, to engage in the business or capacity of a real estate broker within this state without first obtaining a license under the provisions of the act.

Sections 2 and 3 define what shall constitute a real estate broker within the meaning of the act, and section 4 provides for the appointment and organization of the board.

Section 5 defines the powers of the board, and section 7 empowers the board to administer and provide for the enforcement of all the provisions of the act.

In section 11 it is provided how applications shall be made to the board, and what said applications shall contain, and authorizes the board to prescribe the form of application for license.

The board is specially authorized to require and procure any and all satisfactory proof as shall be deemed desirable in reference to the honesty, truthfulness, and reputation of any applicant for the real estate broker's license.

It is further provided that the board shall have power to make, prescribe, and enforce all such rules and regulations connected with the application for any license as shall be deemed necessary to administer and enforce the provisions of the act.

Section 17 provides that the board may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the actions of any business chance broker, curb broker, or real estate broker, or any person who shall assume to act in any such capacity within this state, and shall have the power to suspend or revoke any license issued under the provisions of this act at any time, where the licensee, in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of, etc.; and then follows an enumeration of the various acts which justify a suspension or revocation of the license.

Section 18 provides how the notice shall be given and the manner of hearing the complaint, and that if the board shall determine that any licensee is guilty of a violation of any of the provisions of this act, said license shall be suspended or revoked. The board, acting within the scope of its powers, shall have the right to make findings of fact and a report of said findings of fact shall be de-

livered or mailed to the licensee charged with any offense.

It is provided that the findings of the board shall not be conclusive, but that the civil courts shall have the power to review questions of fact and law involved in any final decision of the board. In the event of an appeal to the court, the court is not restricted to the matters passed upon by the board, but may hear all pertinent evidence bearing upon or affecting the applicant's rights.

It will be observed from the provisions of the act hereinabove stated and otherwise referred to that the real estate board has been given full jurisdiction and power, subject to review by the courts, to make and to enforce all reasonable and needful rules governing the matter intrusted to it in carrying out the purpose and intention of the act. The said board is given the authority to issue licenses to applicants; to require and procure any and all satisfactory proof as shall be deemed desirable in reference to the honesty, truthfulness, and reputation of any applicant for the real estate broker's license.

The authority to issue licenses and, as a condition precedent, to require and procure proof of the applicant's honesty, truthfulness, and reputation, includes the power to withhold a license where the evidence of the applicant's honesty, truthfulness, and reputation is not satisfactory to the board. And it follows as a logical sequence that where a license has been issued on false statements of the applicant, as was the case here, or where it is ascertained by the board that a license has been issued to a person who is dishonest, untruthful, or whose reputation in that respect is bad, the board is clothed with the inherent if not expressed power to suspend or to revoke such license, and may refuse to renew the same from year to year; the condition of the renewal being the absence of any cause which would have been sufficient for the refusal to issue the license in the first instance.

"In the absence of any reason or condition which might warrant the refusal of the granting of a license, the board shall issue a new license for each ensuing year upon the written request of the applicant and the annual fee therefor as herein required."

Our conclusion is that the question propounded to the applicant for license was a reasonable one, that the information sought by the inquiry was such that the board was empowered to require and procure, and that the answer of the plaintiff was false and misleading, and that when this fact was discovered or was made known to the board, the said board was legally authorized to revoke, and was fully justified in revoking, the said license in the manner and form as was done.

[4] But the plaintiff, who sought and for a time enjoyed the benefit and protection of the statute, and who by his own act has placed himself in a position where he can no longer claim the benefits and advantages of said act, now contends that the law is obnoxious to the provision of the state Constitution, which provides that no person shall be deprived of life, liberty, or property except by due process of law, and that the said law is violative of the Fourteenth Amendment to the Constitution of the United States, which declares that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of its laws.

The counsel for plaintiff has not discussed nor even as much as mentioned in his brief the attack made upon the statute as unconstitutional. We might therefore very well assume that the attack has been abandoned. However, a very ready and sufficient an-

swer to the complaint is, that the state in the exercise of its inherent police power had the authority to enact the law in question, and that none of its provisions contravenes either the state or federal Constitution.

The courts have been frequently called upon to determine the question as to how far a state or a municipality may go in an attempt to regulate and control a particular trade, business, or occupation in its relation to the public interest and general welfare, and the decisions have been almost if not quite uniform to the effect that such laws and ordinances come within the exercise of the police power, and will not be set aside unless they are so manifestly unreasonable and arbitrary as completely to destroy or injuriously affect the personal and property rights of the citizens.

We shall not attempt to enter so wide a field for discussion, nor to collate the many cases in which questions similar to the one here presented have been considered and determined. The citation of a few of such cases will suffice.

In the case of Gundling v. City of Chicago, 177 U. S. 183, 20 S. Ct. 633, 44 L. Ed. 725, the Supreme Court of the United States held:

"Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the state to determine, and their determination comes within the proper exercise of the police power by the state, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the state to pass."

In the case of Lehon v. Atlanta, 242 U. S. 55, 37 S. Ct. 72, 61 L. Ed. 149, the Supreme Court of the United States said:

"The only question for our decision is the validity of the law, and of that we have no doubt. Nor are we disposed to take much time in its discussion, notwithstanding the earnest argument of plaintiff in error. The extent of the police power of the state has been too recently explained to need further enunciation. The present case is easily within its principle. It would be very commonplace to say that the exercise of police is one of the necessary activities of government and all that pertains to it may be subjected to regulation and surveillance as a precaution against perversion. The Atlanta ordinances do no more. They provide in effect that all who engage in it or are connected with it as a business shall have the sanction of the state, have the stamp of the state as to fitness and character, take an oath to the state for faithful execution of its duties and give a bond for their sanction. This the state may do against its own citizens and may do against a citizen of Louisiana, which plaintiff in error is, or against a citizen of any other state."

In the case of Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 35 S. Ct. 678, 59 L. Ed. 1211, the court said:

"It is established by repeated decisions of this court that neither of these provisions of the federal Constitution has the effect of overriding the power of the state to establish all regulations reasonably necessary to secure the health, safety, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise. * * *

"And it is also settled that the police power embraces regulations designed to promote the public convenience or the general welfare and prosperity, as well as those in the interest of the public health, morals, or safety." Citing Lake Shore & M. S. R. Co. v. Ohio, 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702; Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499.

The object and purpose of the act under consideration was to regulate the business of real estate brokers, and, in order to protect the general public interest and welfare, to permit no one to engage in such a business except those who may be found after due

and proper investigation to be honest, truthful, and of good reputation. No unfair or improper discrimination is made, and every person, whether a resident or nonresident of the state, who may possess the qualifications required, and who complies with the terms of the act, is permitted to engage in the business.

That the statute comes within the legitimate exercise of the police power of the state we entertain no doubt.

The creation of real estate boards or commissions, and the licensing, regulation, and control and supervision of real estate agents and brokers is of very recent origin in this country. We were informed in oral argument of counsel at the bar that the law under consideration is similar in all essential respects to the statutes of California, Michigan, Tennessee, and perhaps a few other states we do not now recall.

The statute of California was considered by the Supreme Court of that state in Riley v. Chambers, 181 Cal. 589, 185 P. 855, 8 A. L. R. 418; and the court held that the statute was not unconstitutional as making an unreasonable discrimination and distinction in excepting from its provisions persons holding a duly executed power of attorney from the owner of real estate.

In Bratton v. Chandler, 260 U. S. 110, 43 S. Ct. 43, 67 L. Ed. 157, the court had under consideration the constitutionality of section 8 of the Tennessee statute, which, among other things, provided that:

"The commission is hereby authorized to require and procure any and all satisfactory proof as shall be deemed desirable in reference to the honesty, truthfulness, reputation and competency of any applicant for a real estate broker's * * * license * * * prior to the issuance of any such license."

The lower court had held the entire act unconstitutional because section 8 authorized the commission not only to require an applicant to furnish evidence of his qualifications, but to procure independently of the applicant any proof it may deem desirable, and this without any provision for notice or opportunity to meet the evidence so procured, nor even to be advised of the nature or source of the evidence. For this reason the lower court was of the opinion that the act did not afford due process of law and was therefore unconstitutional and void. As a basis for annulling the entire statute the court stated that the first step in the proposed regulation of the real estate business was the granting and issuing of licenses as provided in section 8, and that said section gave color and purpose to every other section in the act, and without which the other sections would be meaningless. The Supreme Court of the United States took a different view of the matter, holding the act to be constitutional and reversing the decision of the lower court.

We here quote the concluding part of the opinion:

"In conclusion, we may say, that if the word 'procure' is more than a tautological repetition of the word 'require,' it was only to confer the power of affirmative direction upon the commission, necessarily to be exercised in supplement to the action of the applicant and with the same publicity and opportunity of the applicant to meet adverse evidence. And the act, construed as we construe it, will take no power from the Commission necessary to the performance of its duties, and will leave no power with it that it can exercise to the detriment of any right assured to an applicant for a license by the Constitution of the United States."

For the reasons assigned, the judgment appealed from is affirmed, at appellant's costs.