## EBERMAN v. MASSACHUSETTS BONDING & INS. CO.

### No. 245.

Municipal Court of Appeals for the District of Columbia.

March 30, 1945.

Mark P. Friedlander, of Washington, D. C., for appellant.

Joseph A. Carey, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

The complaint, bill of particulars and supplemental bill of particulars alleged that the defendant Zirkle, during the time involved, was a licensed real estate broker in the District of Columbia; that plaintiff was employed as a real estate salesman by Zirkle and was a licensed salesman under Zirkle's broker's license; that while associated with Zirkle plaintiff negotiated numerous sales of real estate during the period from August, 1940, to December, 1942, and by reason thereof there came into the possession of Zirkle during this period a total of $5,388.41 as commissions due plaintiff on such sales; that plaintiff received from Zirkle portions of the commissions so due him as the deals were consummated, but never received the full commission; that in each instance Zirkle promised to pay plaintiff the balance; that on account of such commissions Zirkle paid to the plaintiff $860 in 1940, $1,500 in 1941, $1,632.50 in 1942 and $100 in 1943; that Zirkle failed to account for and pay over to plaintiff the balance of $1,295.91; that Zirkle has been adjudicated a bankrupt but has not been discharged from such bankruptcy.

The complaint sought judgment for the aforesaid balance against Zirkle and the corporate defendant which was surety on the bond required of Zirkle as a real estate broker. Service of process was not had upon Zirkle.

The surety in its answer alleged that the complaint failed to state a claim against it upon which relief could be granted, and thereafter filed a motion for judgment on the pleadings, raising the question whether the bond required of a real estate broker covers the claim of a salesman against the broker for commissions. The trial court, in a written memorandum, reached the conclusion that the plaintiff was not entitled to recover on the bond and granted the surety's motion for judgment on the pleadings. Plaintiff has appealed.

The Real Estate and Business Brokers' License Act of 1937, amended 1939, Code 1940, §§ 45—1401 to 1418, established a Real Estate Commission of the District of Columbia and required all real estate brokers and real estate salesmen to obtain licenses before doing business.[1] A condition to obtaining a license is the filing of a bond with surety in the sum of $2,500 in the case of a broker and $1,000 in the case of a salesman.[2] The Act provides:

"Said bond shall be in form approved by the Commission, and conditioned that the applicant shall conduct himself and his business in accordance with the requirements of this chapter; and for his failure so to do any person aggrieved thereby shall have, in addition to his right of action against the principal thereof, a right to bring suit against the surety on said bond either alone or jointly with the principal thereon, and to recover in an amount not exceeding the penalty of the bond any damages sustained by reason of any act, representation, transaction, or conduct of the principal which may be prohibited by this chapter or enumerated as one of the causes for suspension or revocation of a license granted hereunder."[3]

The Commission is given power to suspend or revoke any license when the licensee, "in performing or attempting to perform any of the acts mentioned herein, has—* * * (g) Failed, within a reasonable time, to account for or to remit any money, valuable documents, or other property coming into his possession which belong to others; * * * (j) Been guilty of any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes fraudulent or dishonest dealing."[4]

Plaintiff contends that he is included within the clause "any person aggrieved thereby," that Zirkle failed within a reasonable time to account for or to remit money which came into his possession and which belonged to plaintiff, and that Zirkle was guilty of conduct which constituted fraudulent or dishonest dealing. For these reasons plaintiff says that he is entitled to recover on the bond.

The purpose and design of the Act primarily are, as stated in its title, "to protect the public against fraud in real-estate transactions."[5] The protection of the public interest is the basis for the exercise of the police power in the enactment of such a law.[6] The bond required by the Act is, therefore, for the protection of the public, and the question here presented

---

[1] The Act also applies to business-chance brokers and salesmen.

[2] As of 1941, thirty-two states and the District of Columbia had real estate brokers' license laws. Only nine of these states (Arizona, Idaho, Kentucky, Louisiana, Montana, Nevada, Ohio, Utah, Washington) and the District of Columbia required broker's bonds. California and Oregon formerly required bonds but by amendment eliminated this requirement. Apparently, few states require bonds of salesmen. Semenow, Survey of Real Estate Brokers License Laws (1941).

[3] Code 1940, 45—1405.

[4] Code 1940, 45—1408.

[5] The House report accompanying the bill (H.R.Rept.No.878, 75th Cong., 1st Sess. (1937) stated: "The committee feels that there is a real need for a law to protect the people of the District from fraudulent and dishonest practices in the real-estate business, and that this bill if enacted into law will be effective for the public protection."

[6] State v. Hurlock, 185 Ark. 807, 49 S.W.2d 611; Riley v. Chambers, 181 Cal. 589, 185 P. 855, 8 A.L.R. 418; State ex rel. Davis v. Rose, 97 Fla. 710, 122 So. 225; Zerlin v. Louisiana Real Estate Board, 158 La. 111, 103 So. 528; Roman v. Lobe, 243 N.Y. 51, 152 N.E. 461, 50 A.L.R. 1329; Massie v. Dudley, 173 Va. 42, 3 S.E.2d 176; Payne v. Volkman, 183 Wis. 412, 198 N.W. 438. Cf. Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480, L.R.A.1917F, 514, Ann.Cas.1917C, 643.

is whether a real estate salesman is within the general public intended to be protected by the Act and the bond given pursuant to it. The provisions of the Act must be construed in the light of the purpose of the Act and the evils it was designed to protect against. When the legislature enacts a statute regulating a business for the purpose of protecting the public against existing or potential evils in that business, those engaged in the business are not generally regarded as a part of that public. The public is protected against them and not they against their fellow businessmen.

The Act established standards of conduct for, and requires bonds of, both brokers and salesmen, and authorizes suit on the bond by "any person" aggrieved by failure of licensee to conduct himself or his business in accordance with the requirements of the Act. The general expression "any person" is restricted, however, by the provision that damages recovered on the bond are limited to those "sustained by reason of any act, representation, transaction, or conduct of the principal which may be prohibited by this Act or enumerated as one of the causes for suspension or revocation of a license granted hereunder." It is not contended that Zirkle was guilty of any act prohibited by the statute outside of those acts enumerated as causes for suspension or revocation of a license. Those causes are limited to obtaining a license by false or fraudulent representation, and "where the licensee, *in performing or attempting to perform any of the acts mentioned herein*" (italics supplied) has committed one of the sixteen prohibited acts, including (g) and (j), previously quoted in this opinion. If we assume that Zirkle in failing to account to plaintiff for his earned commissions, violated both subdivisions (g) and (j), the question remains whether he violated them while "performing or attempting to perform any of the acts mentioned herein." To what acts does this clause refer?

It seems obvious that the acts so referred to are those activities set forth in section 2[7] in defining the meaning of real estate broker and real estate salesman. Such activities deal with the sale, purchase or rental of real estate, and negotiation of loans on real estate, by one who acts for another and for a consideration. The acts of Zirkle, of which plaintiff complains, did not involve any of these activities. The sales were completed and the commissions collected and up to this point plaintiff had no complaint. The complaint of plaintiff is Zirkle's default in not paying over to plaintiff his share of the earned and collected commissions. Reprehensible as this may be, it did not occur in the course of Zirkle's activity as a broker. The relation of plaintiff to Zirkle is described in the Act as that of employee, but even if a real estate salesman be considered more in the nature of an independent contractor or business associate, it is plain that the relation is an entirely different one from that between the broker and those of the general public for whom the broker acts in his representative capacity.

It seems to us that the wording of the statute, as well as its express purpose, limits recovery on the bond to those for whom Zirkle acted as broker, those principals who entrusted their money or property to Zirkle in his capacity as broker and does not include a salesman of Zirkle who dealt with him as an employer or business associate.

Since the broker's bond is comparatively small and may be wholly inadequate to protect the clients of a defaulting broker,[8] we feel that our construction aids in effectuating the primary purpose of the Act. The public should not be compelled to share the relatively small protection of the bond with salesmen who are in a much better position to protect themselves. Here, for a period of three years Zirkle withheld portions of commissions due plaintiff. This continued with the knowledge, if not consent, of plaintiff until the amount withheld equaled more than one-half the penal sum of the bond. We do not think the bond was intended to protect one who permits such a situation to develop.[9]

We have found only one reported case closely analogous to the present one.[10] Sigler v. Massachussetts Bonding & Insurance Co., 71 Ohio App. 425, 50 N.E.2d 390, involved facts quite similar to those of the instant case, and there the court, the presiding judge dissenting, held the

[7] Code 1940, 45—1402.

[8] See Brown v. Christman, 75 U.S.App. D.C. 203, 126 F.2d 625.

[9] Suit on the bond must be brought within one year from date of accrual of the cause of action. Code 1940, 45—1405.

[10] Generally, see Annotation, 75 A.L.R. 1130, "Character and extent of liability on real estate broker's statutory bond."

salesman entitled to recover on the broker's bond. With due deference to that decision, we are unable to agree with it, assuming that the Ohio statute is substantially identical with ours, and think the correct rule is stated in the dissent to that decision.

Affirmed.

CAYTON, Associate Judge (dissenting).

On both substantive and procedural grounds I think the judgment should be reversed.

### 1. *The Substantive Question*

Unlike a gratuitous or accommodation surety, this corporate bonding company is not a "favorite of the law" and not entitled to the protection of the strictissimi juris doctrine.[1] The United States Supreme Court, adopting the same rule of construction as applies to insurance contracts has held that such a bond, if it be reasonably susceptible of two differing constructions, should be construed in a light favorable to the obligee.[2] But even if it is to be construed strictly in favor of the surety company it means only that the interpretation must be a reasonable one,[3] "so as to impose upon the surety only such burdens as clearly respond to the terms thereof, and should not be extended by implication or presumption to cover other burdens not coming within its scope."[4]

What was the status of this particular plaintiff in the court below? He alleged clearly enough that he had an interest in a series of commissions for sales he had made for the broker Zirkle, that Zirkle had recognized his claim and paid part thereof and had *dishonestly* withheld the remainder. This was a violation of Code Section 45—1408, because under subsection (g) thereof he had

"Failed, within a reasonable time, to account for or to remit any money, valuable documents, or other property coming into his possession which belong to others;" and had also under sub-section (j)

"Been guilty of any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes fraudulent or dishonest dealing;"

Appellee argues that appellant had no rights under the bond because he was a mere employee of Zirkle. And yet the bond, and the statute requiring it, both specifically provide that "any person aggrieved" by the failure of a broker to conduct himself and his business in accordance with the law may recover on the bond

"any damages sustained by reason of any act, representation, transaction, or conduct of the principal which may be prohibited by this chapter or enumerated as one of the causes for suspension or revocation of a license granted hereunder."

It may be admitted at once that an ordinary employee of a broker could not sue on such a bond if his claim were merely upon a money debt owing by the broker. But we should take judicial notice that most real estate salesmen, even if they be called employees, are really operating upon common ventures with the brokers for whom they work and are for these purposes really colleagues or business associates of their brokers; that they usually receive no salary and are paid only out of commissions they earn. In other words that they are upon a different footing from other employees claiming for services rendered; and different also from general creditors of a broker. They have a direct interest in and claim upon commissions earned by the broker through their efforts. In this respect, a salesman's status is but slightly different from that of an independent broker who becomes entitled to share in a commission. This being true, it seems clear that such a salesman is entitled to look to the surety when the broker unlawfully or dishonestly withholds portions of commissions due. Such, it seems to me, is the reasonable construction to give this type of bond, prescribed as it is by a statute hav-

[1] Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; United States F. & G. Co. v. United States, 191 U.S. 416, 24 S.Ct. 142, 48 L. Ed. 242; United States, to Use of District of Columbia v. Bayly, 39 App.D.C. 105, 41 L.R.A., N.S., 422; Hartford Accident & Indemnity Co. v. Federal Bond & M. Co., 8 Cir., 59 F.2d 950; Maryland Casualty Co. v. Fowler, 4 Cir., 31 F.2d 881, 63 A.L.R. 1375; City of Cheyenne v. Maryland Casualty Co., D.C.D. Wyo., 13 F.2d 401.

[2] Guarantee Co. of North America v. Mechanics' Sav. Bank & T. Co., 183 U. S. 402, 22 S.Ct. 124, 46 L.Ed. 253; American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977.

[3] Ambrose v. Hayes, 36 App.D.C. 255.

[4] Commercial Nat. Bank of Washington v. London & Lancashire Indemnity Co. of America, 56 App.D.C. 76, 10 F.2d 641, 642.

ing a broad social purpose. A narrower interpretation may easily result in obstructing the public protection which Congress intended.

We need make no attempt to decide just what arrangement existed between these two parties or to decide any other ultimate questions in the case, such as plaintiff's failure to press his claim sooner than he did. He may or may not have had a satisfactory reason for waiting. This, like other matters of proof, will depend upon what develops at the trial, either in support or refutation of plaintiff's claim. Our decision should be confined to the pleadings upon which the judgment was entered.

I think the Sigler case, cited by the majority, is practically identical with this one. There the court held that the salesman was a "person" to whom the money "belonged" and as such was entitled to recover on the bond. The court said [71 Ohio App. 425, 50 N.E.2d 392]:

"A failure to remit to a salesman his part is a violation of the act the same as the failure to remit to a seller his part is a violation of the act, and the bond is specifically and in terms for the benefit of '*Any person* claiming to have been damaged * * * by reason of the violation of the terms' of the act." (Emphasis supplied)

I cannot agree that the only purpose of the legislature was the protection of members of the general public, if that term means only actual clients of brokers. If the law be given so limited an application I apprehend that there would be no protection to banks, title companies, fellow brokers, or others who may be fleeced by unscrupulous brokers. I feel that Congress intended no such limited protection. I agree with the Ohio court that

"It is apparent that the Legislature intended to require that such business should be conducted with honesty and integrity and in accordance with the provisions of the aforesaid section. To insure that such business should be so conducted, it required that brokers furnish a bond indemnifying 'any person' for damages suffered by the operation of such business in violation of said act; and we can think of no good rea-

son for concluding that the Legislature intended thereby that the seller or buyer of real estate through a real estate broker should be protected by the act, but that a salesman, operating in the business upon a commission basis, should not likewise be protected. The statute requires a bond to indemnify *any* person damaged by a violation of the act, and we know of no satisfactory reason for concluding that the Legislature did not mean what the plain words used by it do mean."

## 2. The Procedural Question

The Municipal Court is now functioning under rules designed to make its practice conform to that in the Federal courts. And we need not search far to learn that there is a seeming unanimity of decision in those courts to the effect that a plaintiff's complaint, when under attack on a motion for judgment, should be liberally construed in favor of the pleader and in a "light most favorable to the plaintiff, and with every intendment regarded in his favor." [5] This rule of construction was very clearly applied by the Eighth Circuit, speaking through Justice Sanborn in Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302, 306, in this language:

" * * * There is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim."

The rule has also been restated in different language in a later case, Louisiana, etc., Union, Inc. v. Great Atlantic & Pacific Tea Co., 8 Cir., 131 F.2d 419, 423, where we are told that "no matter how improbable it may be that the plaintiff can establish the allegations of his complaint [he] is, nevertheless, entitled to the opportunity to make the attempt."

Judging the pleadings by these tests I think it cannot be said with any assurance that it was impossible for plaintiff to prove a case, or "that defeat must be his inevitable fate and that the coup de grace was therefore properly administered at the inception of the struggle." [6]

---

[5] Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865, 869; Pliner v. Nesvig, D.C., 42 F.Supp. 297; Cohen v. United States, 8 Cir., 129 F.2d 733; Continental Collieries, Inc. v. Shober, 3 Cir., 130 F.2d 631; United States v. Thurston County, D.C., 54 F.Supp. 201; Publicity Building Realty Corp. v. Hannegan, 8 Cir., 139 F.2d 583; Tyler Fixture Corp. v. Dun & Bradstreet, Inc., U.S.D.C. W.D.Mich., 3 F.R.D. 258.

[6] Dissent in Johnson v. Uline, D.C.Mun. App., 40 A.2d 260, 264.