79 So.2d 873 (1955)
227 La. 537
Joseph L. AMATO
v.
LATTER & BLUM, Inc. and Lawrence Teijelo.
No. 41850.
Supreme Court of Louisiana.
March 21, 1955.
Rehearing Denied April 25, 1955.
*874 William C. Crais, III, New Orleans, for plaintiff-appellant.
Rivet & Blum, Adrian G. Duplantier, New Orleans, for defendants-appellees.
MOISE, Justice.
This is an appeal by Joseph L. Amato from a judgment sustaining an exception of no right or cause of action.
On a consideration of the petition, the Court must take as true, for the purposes of the exception, all well pleaded allegations, but we are not bound to accept the plaintiff's or the defendants' conclusions of law. Herring v. Breedlove, 222 La. 1088, 64 So.2d 441; Succession of Gladney, 223 La. 949, 67 So.2d 547; Broaux v. Laird, 223 La. 446, 65 So.2d 907; Austin v. Succession of Austin, 225 La. 449, 73 So.2d 312.
Plaintiff brings this suit against Latter & Blum, Inc., real estate agency, and its salesman, Lawrence Teijelo, for damages he alleges to have suffered to the extent of $15,500. He swears that said Lawrence Teijelo failed to communicate to Julian Legendre, the owner of property located at 2656-2658 Orleans Avenue, this City, his offer of $9,500, which was the highest offer made to purchase this property listed with Latter & Blum, Inc.which offer we assume to have been made on the standard form of contract authorized by the Real Estate Board of New Orleans, Inc.
In brief, plaintiff states that several lower offers made by him to purchase this property were rejected by Latter & Blum, Inc. with a notation that an offer of $9,500 would be acceptable, and that he, thereupon, made an offer in that amount which was received by the owner's agent.
Plaintiff alleged in his petition that his offer of $9,500 was transmitted to Lawrence Teijelo on December 8, 1953, through Vincent Trapani, another real estate agent licensed and bonded in conformity with the statutes. He further alleged that on December 9, 1953, Lawrence Teijelo, acting for and on behalf of Latter & Blum, Inc., misrepresented to Julian Legendre, owner, that there was no higher offer outstanding to purchase his property than the offer of $9,250 made by Louis Schwander; that the property was subsequently sold for $9,250 to Louis Schwander, who is now asking $25,000 for it. Plaintiff further alleges that he wanted the property, which lies adjoining and adjacent to his property, for the expansion of his business; that the property would now cost him $25,000 instead of $9,500, a difference of $15,500 which he now seeks to recover as damages. Plaintiff contends that he sustained this injury through the fault of defendants in not performing a duty to the public of which he is a member.
The defendants contend that no liability ex delicto arises to a third party from a dereliction of duty by an agent to his principal (the vendor), and for this reason plaintiff, the third party, has no cause or right of action against defendants. This contention is true in some cases, but in the instant matter we are governed by legislative enactments which are controlling.
*875 Under the legitimate exercise of its police power the legislature passed Act 236 of 1920, now incorporated in the LSA-Revised Statutes, Chapter 17, 37:1431-37:1459. It provides for the creation of the Louisiana Real Estate Board, consisting of five members appointed by the Governor. This board makes, prescribes, and enforces rules and regulations relative to applications for real estate brokerage licenses. No person is permitted to engage in the business or capacity of a real estate broker or salesman unless he is granted a license by the board which inquires into his honesty, truthfulness and reputation. After being issued a license, the broker must conspicuously display his license in his place of business.
LSA-Revised Statutes 37:1447 provides that before any person opens, engages in, manages, or conducts any real estate agency or office, or deals in real estate or rent collecting, as agent or broker, he shall furnish bond with security in favor of the Governor. This section reads in part:
"* * * The bond shall not exceed ten thousand dollars for the benefit of any person in interest as his interest may appear, and shall be conditioned that the agent or broker shall carry out the objects and purposes for which his agency, office, or business has been established, and that the agent or broker shall honestly conduct his business and pay all damages which may result from his actions as a real estate agent or broker. * * *
"Anyone who is injured or damaged by the agent or broker by any wrongful act done in the furtherance of such business or by any fraud or misrepresentation by the agent or broker may sue for the recovery of the damage before any court of competent jurisdiction." (Italics ours.)
The real estate board may conduct investigations of real estate brokers. It is granted the power to revoke or suspend licenses. Penalties are exacted for the violation of the statute.
In Zerlin v. Louisiana Real Estate Board, 158 La. 111, 103 So. 528, 531, this Court upheld the constitutionality of the statute and stated that it came within the legitimate exercise of the police power of the state.
"The creation of real estate boards or commissions, and the licensing, regulation, and control and supervision of real estate agents and brokers is of very recent origin in this country. * * *
"The object and purpose of the act under consideration was to regulate the business of real estate brokers, and, in order to protect the general public interest and welfare, to permit no one to engage in such a business except those who may be found after due and proper investigation to be honest, truthful, and of good reputation. No unfair or improper discrimination is made, and every person, whether a resident or nonresident of the state, who may possess the qualifications required, and who complies with the terms of the act, is permitted to engage in the business." (Italics ours.) Zerlin v. Louisiana Real Estate Board, supra.
In the case of Charles Wolff Packing Co. v. Court of Industrial Relations of State of Kansas, 262 U.S. 522, 43 S.Ct. 630, 633, 67 L.Ed. 1103, the United States Supreme Court stated:
"* * * The circumstances which clothe a particular kind of business with a public interest, in the sense of Munn v. [State of] Illinois", 94 U.S. 113, 24 L.Ed. 77, "and the other cases, must be such as to create a peculiarly close relation between the public and those engaged in it, and raise implications of an affirmative obligation on their part to be reasonable in dealing with the public."
In Hertz Drivurself Stations, Inc., v. Siggins, 359 Pa. 25, 58 A.2d 464, 472, 7 A.L.R.2d 438, where there was an improper *876 exercise of the police power, we find this statement:
"The public interest, where such is essential, before the legislature may, in an exercise of the State's police power, subject private property to public regulation and control must be `a legal interest' (veritably, `a right') and not merely a desire born of personal concern, convenience or economy covetous of the use of another's property. * * *"
The statutes place real estate brokerage in the status of a public business. Since it is subject to police regulation and vested with a public interest, it is self-evident that the defendants owe a duty to the public. The required bond protects the public. Moore v. Burdine, La.App., 174 So. 279; Seybold v. Fidelity & Deposit Co. of Maryland, La.App., 17 So.2d 841. Plaintiff stands in the capacity of one of the public, and, therefore, we think that there was a legal duty imposed upon the defendants to communicate to the prospective vendor plaintiff's offer of $9,500 to purchase the listed property.[1]
The defendants' contentions are not sound in law, and, therefore, plaintiff's petition does disclose a legal right or cause of action. In this connection we may observe that law is a growthit is a science. Right and wrong exist in the nature of things. Matters are not always right because they are commanded, nor wrong because they are prohibited. All progress in our civilization and the progress of legislation is to right wrong, so that the courts may be in a better position to vindicate, when possible, the right of a citizen to have his day in court.
For these reasons, the judgment of the district court sustaining an exception of no right or cause of action is reversed and set aside, and the case is remanded for a trial on the merits.
HAMITER, J., dissents with written reasons.
HAMITER, Justice (dissenting).
The majority opinion herein apparently recognizes that in the absence of LSA-R.S. 37:1431 et seq. no duty would be owed to this plaintiff by the defendant real estate agency and, hence, no action ex delicto could arise in his favor for failure of the agency to do an act which it was not legally bound to perform. (Of course, the agency owed a duty to its principal, the owner; but he is not here complaining of the alleged wrongful act.) However, to sustain the conclusion of the majority reliance is placed on the mentioned statutory provisions, particularly the language of Section 1447 (this section requires the furnishing of bond by a real estate agent and provides for suit thereon) which states that "Anyone who is injured or damaged by the agent or broker by any wrongful act done in the furtherance of such business * * * may sue for the recovery of the damage * * *."
Unquestionably, the legislation invoked was enacted in the interest and for the protection of the public. But thereby the Legislature, in my opinion, intended only to protect those members of the general public to whom the agent or broker owed a duty either pursuant to a contract or by operation of law. No language is contained herein indicating an intention to impose new or additional duties on real estate agents or to create relationships between them and other parties not theretofore in effect. Accordingly, I think that the statutory provisions relied on, particularly the one reciting that anyone injured by any wrongful act may sue for the recovery of damages, merely contemplated a damage suit by an injured person against the surety on the required bond for the breach of a legal duty owed by the agent to him and created through contract or by existing laws.
Since the instant real estate agency did not owe any duty to this plaintiff, and hence no action ex delicto arose in the latter's favor, I am of the opinion that the *877 district court correctly sustained the exception of no cause of action and that its judgment should be affirmed.
I respectfully dissent.
NOTES
[1] Zichlin v. Dill, 157 Fla. 96, 25 So.2d 4.