930 So.2d 165 (2006)
Pearlie Bell, Wife of/and Timothy HARRIS
v.
Betty C. POCHE, GBS Properties, L.L.C., d/b/a Prudential Gardner, Realtors, Glenn M. Mediamolle and English Turn Limited Partnership.
No. 2005-CA-0664.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 2006.
*167 Randall A. Smith, Stephen M. Wiles, Smith & Fawer, L.L.C., New Orleans, Counsel for Plaintiffs/Appellees.
Nancy J. Marshall, Karen P. Holland, Georgia Kobos Thomas, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, Counsel for Defendant/Appellant.
*168 (Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, Sr., and Judge EDWIN A. LOMBARD).
DENNIS R. BAGNERIS, Sr., Judge.
In this suit for damages resulting from unfair trade practices in violation of La. R.S. 51:1401, et seq., a jury found that Defendants, Glen Mediamolle ("Mr.Mediamolle") and English Turn Limited Partnership ("English Turn"), violated the Louisiana Unfair Trade Practices Act in its business dealings involving property located at 49 English Turn Drive in New Orleans, Louisiana. Mr. Mediamolle and English Turn now appeal the trial court judgment, which awarded plaintiffs $170,106.25 in damages and ordered an award of attorneys' fees and costs in the amount of $82,393.27. For the reasons stated below, we affirm.

FACTS AND PROCEDURAL HISTORY
On October 7, 2001, plaintiffs, Pearlie Bell Harris, and her husband, Timothy Harris, and their six children met with their real estate agent, Ms. Betty Poche, to see the property for sale at 49 English Turn Drive. At that time, Mr. and Mrs. Harris told Ms. Poche that they wished to make an offer for the property located at 49 English Turn Drive for $435,000.00. Ms. Poche testified that although she considered that amount to be too low, she agreed to speak with the listing agent, Mr. Mediamolle of English Turn, to find out if the offer was "in the ball park" of what the seller would take. Mr. Harris testified that it was his understanding that if $435,000.00 was in the ballpark, then Ms. Poche would put the offer in writing.
Ms. Poche testified that for the next two days, she called Mr. Mediamolle to discuss Mr. Harris's offer, and asked whether it was within a range that the seller might consider. Ms. Poche testified that she remembered calling Mr. Mediamolle on Monday morning from the office, and her cell phone records reflect several other calls to Mr. Mediamolle, which she testified related to the Harrises' offer. Ms. Poche further testified that Mr. Mediamolle told her that the offer was too low, and that he did not encourage or suggest having her write up the Mr. Harrises' offer. According to Ms. Poche, Mr. Mediamolle gave her the impression that he had actually checked with the seller about the $435,000.00 offer, and that the seller was not interested.
At trial, Mr. Mediamolle testified that another couple, Mr. and Mrs. Orgeron, had previously submitted an offer of $435,000.00 for 49 English Turn on September 10, 2001, and then withdrew it immediately in the wake of the "national crises" of September 11, 2001. Mr. Mediamolle testified that the seller, a relocation company, had instructed him to contact Mr. and Mrs. Orgeron, following September 11, 2001, in order to encourage them to resubmit their offer of $435,000.00. Mr. Mediamolle also testified that the seller told him that if the property did not sell soon (with the time frame being September 2001 though October 2001), the company would auction the property. Mr. Mediamolle testified that he was approved to "approach a buyer to secure a sale at $475,000.00 for the close date of 9/30/01." Mr. Mediamolle testified that he did not recall any discussions with Ms. Poche concerning the purchase of 49 English Turn Drive and whether $435,000.00 might be something the sellers would be interested in for the property.
Mr. Mediamolle testified that on October 11, 2001, he wrote up an offer from another set of buyers, Mr. and Mrs. Fuchs, for $425,000.00  an offer that was $10,000.00 less than the amount that the Harrises were willing to pay on October 8, *169 2001. The seller directed Mr. Mediamolle to have Mr. and Mrs. Fuchs resubmit the offer, with a $2,500.00 nonrefundable deposit, which they did on October 18, 2001. The seller accepted Mr. and Mrs. Fuchs offer on October 19, 2001.
On October 2, 2002, Plaintiffs filed suit against Ms. Poche, GBS Properties, L.L.C., d/b/a Prudential Gardner Realtors, Mr. Mediamolle, and English Turn for damages which they claim they sustained as a result of a failed real estate transaction.[1] Following a four day trial, the jury rendered a unanimous verdict in favor of Mr. and Mrs. Harris, finding that: (1) Mediamolle and English Turn used an unfair or deceptive method, act or practice in the conduct of business related to 49 English Turn, and (2) that the unfair or deceptive method, act, or practice was a cause in fact of any damage to the Harrises. The jury awarded Plaintiffs $15,125.00 for their loss of use and enjoyment of 49 English Turn Drive, and $185,000.00 for the loss of increased value of the property. The jury then apportioned 85% of the fault to Mr. Mediamolle and English Turn and apportioned 15% of the fault to the settling defendants Betty Poche and Prudential Gardner. The trial judge entered judgment in accordance with the jury's verdict, and also ordered Mr. Mediamolle and English Turn to pay attorney's fees and costs in the amount of $82,393.27 under the Louisiana Unfair Trade Practices Act.
On appeal, Mr. Mediamolle and English Turn assert the following six assignments of error: (1) the trial court erred when it denied their Motion for Directed Verdict; (2) the trial court erred when it denied their Motion In Limine to exclude the testimony of plaintiffs' expert appraiser, Jimmie Thorns, Jr.; (3) the jury erred in its finding that Glenn Mediamolle used an unfair or deceptive trade practice in the conduct of any business related to 49 English Turn Drive which was a cause-in-fact of any injury to Plaintiffs when there was no expert testimony that any act or omission on the part of Mr. Mediamolle fell below the standard of care required of a real estate agent; (4) the jury erred when it apportioned 15% of the fault to Plaintiffs' own real estate agent, Ms. Poche, while allotting 85% of the fault to Mediamolle, agent for the seller; (5) the trial court erred when it refused to instruct the jury that an award of lost profits would be impermissible as a windfall to Plaintiffs because they would reap the benefits of ownership of the property without having to endure the associated financial risks and responsibilities associated with the ownership of the property, as requested in defendant's Requested Jury Charge No. 9; and (6) the trial court erred in awarding attorneys' fees and costs to plaintiffs.

STANDARD OF REVIEW
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings of the trier of fact; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations *170 and inferences are as reasonable. Id. Reversal of findings of fact on appeal requires that: (1) the appellate court find from the record that no reasonable factual basis exists for the trial court's finding, and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Trans. and Development, 617 So.2d 880 (La.1993).

Issue One: Whether the trial court erred when it denied defendants' Motion for Directed Verdict?
A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Wichser v. Trosclair, 99-1929 and 99-1930, p. 3 (La. App. 4 Cir. 2/28/01), 789 So.2d 24, 26. A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Lott v. Lebon, 96-1328, p. 4 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 615-616 citing New Orleans Property Dev. v. Aetna Casualty, 93-0692 (La.App. 1 Cir. 4/8/94), 642 So.2d 1312. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc., 96-0935 (La.App. 1 Cir. 2/14/97), 691 So.2d 208, 211.
Our review of the record in this case convinces us that the trial court correctly evaluated the evidence presented by Mr. and Mrs. Harris in concluding that they had borne their burden of proof pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law as set forth in La. R.S. 51:1401, et seq. and that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions based upon the evidence presented. After considering all inferences in the light most favorable to plaintiffs, we do not find that the trial court committed manifest error in denying the Defendants' Motion for Directed Verdict.

Issue Two:[2]Whether the proper measure of damages for lost opportunity under The Louisiana Unfair Trade Practices and Consumer Protection Law is based on the value of the property at the time of trial?

Defendants complain that the trial court should have granted their Motion in Limine to exclude the testimony of the plaintiffs' expert appraiser, Jimmie Thorns, Jr. ("Mr.Thorns") because Mr. Thorns incorrectly based his expert opinion as to the damages allegedly sustained by plaintiffs on the value of the home in question at the time of the trial rather than its value at the time of the disputed sale. Similarly, defendants complain that the trial court should have instructed the jury that an award of lost profits would be an impermissible windfall. The trial court denied both the Defendants Motion in Limine and the proposed jury instruction.
The issue before this Court is whether the Harrises are entitled only to the difference in the sale price and the appraised *171 value on the date of the act of sale or whether they are entitled to their loss of enjoyment of the property for that time, and the loss of increased value as the property appreciated over the years. Plaintiffs argue that because the Louisiana Unfair Trade Practices Act provides for actual damages, then the actual damages that the Harrises sustained include their loss of enjoyment of the property for that time, and the loss of increased value as the property appreciated over the years.
The Louisiana Unfair Trade Practices and Consumer Protection Law is set forth in La. R.S. 51:1401, et seq. It declares unfair methods of competition, as well as unfair or deceptive acts or practices in the conduct of any trade or commerce, to be unlawful. An act is not required to be both unfair and deceptive. What constitutes unfair and/or deceptive practices is not specifically defined, but is determined on a case-by-case basis. Core v. Martin, 20,528 (La.App. 2 Cir. 5/10/89) 543 So.2d 619, 621. The Unfair Trade Practices Law does not prohibit sound business practices, the exercise of permissible business judgment or appropriate free enterprise transactions. A practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Ahmed v. Bogalusa Kidney Care Center, 89-0313 (La.App. 1 Cir. 4/10/90) 560 So.2d 485, 489. Conduct is considered unlawful when it involves fraud, misrepresentation, deception, breach of fiduciary duty or other unethical conduct. United Group of Nat. Paper Distributors, Inc. v. Vinson, 27,739 (La. App.2 Cir. 1/25/96), 666 So.2d 1338. A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition. Id.; Monroe Medical Clinic, Inc. v. Hospital Corp. of America, 24,426 (La. App. 2 Cir. 7/21/93) 622 So.2d 760.
On the issue of damages, the Louisiana Unfair Trade Practices Act, La. R.S. 51:1409(A), provides as follows:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1409 may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs. Upon a finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs. (Emphasis added)
The Defendants cite to three state court decisions, Womack v. Sternberg, 247 La. 566, 172 So.2d 683, 686 (1965); Langendorf v. Administrators of the Tulane Ed. Fund, 361 So.2d 905 (La.App. 4 Cir. 6/13/78); and Cousins v. Realty Ventures, Inc., 01-1223 (La.App. 5 Cir. 01/14/03), 844 So.2d 860 for the proposition that the proper calculation of damages in an alleged failed real estate transaction is measured by the difference between the price of the immovable at the time of the actual disputed sale and the fair market value of the thing on the date *172 of that sale. However, as Plaintiffs correctly point out, these three cases cited by Defendants address breach of contract damages and do not address a cause of action in tort, under the Louisiana Unfair Trade Practices Act.
Plaintiffs also cite to three state court decisions; Amato v. Latter & Blum, Inc. 227 La. 537, 79 So.2d 873 (1955); Avegno v. Byrd, 377 So.2d 268 (La.1979); and Amoco Production Co. v. Texaco, Inc., 2002-240, (La.App. 3 Cir. 1/29/03), 838 So.2d 821 for the proposition that the proper calculation of damages is measured by the difference between the price of the immovable at the time of the actual disputed sale and the property's value at the time of trial. However, as Defendants correctly point out, these three cases cited by Plaintiffs also fail to address the issue of the proper measure of damages under the Louisiana Unfair Trade Practices Act. Accordingly, there is a paucity of Louisiana jurisprudence directly on point that governs the issue of the measure of damages in a situation where a seller's agent discourages a viable offer so that no purchase agreement ever comes to fruition.
During the hearing on the Motion in Limine, the trial court acknowledged that there were no cases on point. In making the decision to deny Defendants' Motion in Limine and to allow Plaintiffs' expert, Mr. Thorns, to testify as to the value of the home in question at the time of trial, the trial judge stated as follows, in pertinent part:
I think one of the rationales behind the Unfair Trade Practice Act is to discourage people from preventing you from being able to realize a benefit or a gain from an investment. And if that's  if that's part of the rationale and they (plaintiffs) succeed under the Unfair Trade Practices Act,  I think under the Unfair Trade Practices Act they (plaintiffs) have the ability, if they were to prove it, to prove  to be entitled to damages based on what they could have earned and what value they could have realized from the purchase of the property as it relates to equity, which would be the current value of the property versus the value at the time that they would have purchased it.
* * * * * *
The Unfair Trade Practices Act is supposed to be to allow a person who could have invested in a business or who is running an ongoing business, to  they should have been able to realize a certain value out of that business.
We agree with the trial judge that one of the rationales behind the Unfair Trade Practice Act, which again is a cause of action in tort, is to discourage people from preventing others from being able to realize a benefit or gain from an investment. As such, we agree with the trial court that once the Harrises proved a claim under the Unfair Trade Practices Act, then at that time they were entitled to seek damages for the difference between the purchase price of the home in November 2001, and the appraised value of the home at the time of trial.
At trial, the Harrises introduced uncontradicted testimony that if they had purchased # 49 English Turn Drive in 2001, they would still be living there today, and would have kept it for at least five years or more. Further, Mr. Thorn testified at trial that the house had not undergone any major renovation or structural changes since the 2001 sale, which would account for any significant increase in value, separate from the appreciation due to the market. At trial, Mr. Thorn testified that the appraised value of the property at the time of trial in October of 2004 was $700,000.00 *173 while the purchase price of the property in November of 2001 was $435,000.00.
Although the jury could have awarded $265,000.00 (the difference between $700,000.00 and $435,000.00), it awarded the lesser amount of $185,000.00 for the loss of increased value of the property. In arriving at this lower amount, we can only assume that the jury did, in fact, take into consideration the testimony of Mr. Mediamolle's expert that the current owner made some cosmetic changes and redecorated, which prevented the Harrises from receiving a windfall for the improvements that the current owner may have made.
Accordingly, we find no merit to Defendants' argument that the trial court erred when it denied the Motion in Limine to exclude the testimony of Plaintiffs' expert appraiser, Jimmie Thorns, Jr. Further, we find no merit to Defendants' argument that the trial court erred when it refused to instruct the jury that an award of lost profits would be impermissible as a windfall to Plaintiffs.

Issue Three: Whether the jury erred in its finding that Mr. Mediamolle used an unfair trade practice when there was no expert testimony that he breached the standard of care required of a real estate agent?
Defendants argue that there was absolutely no expert testimony offered by Plaintiffs that Mr. Mediamolle breached the standard of care required of a real estate agent under the circumstances. We find no merit to this assignment of error.
A review of the record reveals that Mr. Mediamolle's own expert, Mr. Mark Rodi, testified that he would have encouraged Ms. Poche to make an offer. When presented with the hypothetical facts applicable to the instant case, Mr. Rodi testified as follows:
Q. So I take it, if you had gotten a call at that time for a listing which, although it was listed for $559,000.00, if your client had been suggesting to you, why didn't you try to go to so-and-so and get $475,000.00; and were thinking of auctioning it; and why don't you go to the person who submitted $435,000.00 and get them to resubmit if  if another agent called you in the middle of all of that and said, I've got a buyer interested in paying $435,000.00, I take it that you wouldn't have said, no, that's too low, and discouraged them?
A. Absolutely not. I'd have told them, write that offer, let's get it presented. And that's what the duty of that  of the agent would be, is to write that offer.
Q. And you would encourage that?
A. Absolutely.
Q. You wouldn't discourage it?
A. I would never discourage any offer. It begins communication.
The jury heard this testimony and it determined that Mr. Mediamolle had breached his duty by using an unfair or deceptive method, act or practice to thwart the Harrises attempt to purchase the property and advance his own client's offer. Accordingly, we find the evidence was sufficient for the jury to find that Mr. Mediamolle misled Ms. Poche when he told her that $435,000.00 was "too low" to submit as an offer.

Issue Four: Whether the jury erred when it apportioned 15% of the fault to Plaintiffs' own real estate agent, Ms. Poche, while allotting 85% of the fault to Mr. Mediamolle?
Defendants allege that Ms. Poche admitted under oath that she never submitted to Mr. Mediamolle any offer to purchase the property for $435,000.00 on behalf of her clients. Consequently, Defendants argue that Ms. Poche should be the person responsible *174 for the failure to put the offer in writing.
Apportionment of fault is a question of fact, subject to the manifest error/clearly wrong standard of review. In comparing the relative fault of the parties, several factors are considered, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. Watson v. State Farm and Cas. Ins. Co., 2158 (La.1985), 469 So.2d 967, 974.
Once the jury has made a determination as to the apportionment of fault, any allocation of fault within an acceptable range cannot be considered clearly wrong. Riley v. Reliance Ins. Co., 97-0445 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, 163. In the instant case, the jury apportioned 85% of the fault to Mr. Mediamolle and 15% of the fault to Ms. Poche. Based on the facts of this case, we cannot find that this allocation was clearly wrong.

Issue Five: Whether the trial court erred in awarding attorneys' fees and costs to Plaintiffs.
Defendants argue that the award of attorney's fees and court costs should be reversed because Mr. Mediamolle neither breached a duty owed to the Harrisses nor engaged in any unfair or deceptive trade practice. We find no merit in this assignment of error.
The Louisiana Unfair Trade Practices Act, La. R.S. 51:1409(A), provides that in the event damages are awarded then "the court shall award to the person bringing such action reasonable attorney's fees and costs." Because we find no error in the trial court's judgment as to liability, we do not find that the trial court erred in awarding attorneys' fees and costs to the plaintiffs.
For these reasons, we affirm the judgment of the trial court in favor of Mr. and Mrs. Harris in the amount of $170,106.25, and the trial court's award of attorneys' fees and costs in the amount of $82,393.27.
AFFIRMED.
JONES, J., respectfully dissents.
JONES, J., Dissenting.
A contract affecting title to immovable property must be in writing and a mandate authorizing an agent to buy or sell immovable property must be express and special and must also be in writing. See Tchoupitoulas, Inc. v. McCullough, 349 So.2d 346 (La.App. 4 Cir. 6/7/77).
NOTES
[1] Ms. Poche and her agency, GBS Properties, L.L.C., d/b/a Prudential Gardner settled with plaintiffs on the first day of trial.
[2] Defendants/appellants' second and fifth assignments of error both address the valuation of the property for purposes of calculating the loss of increased value, and involve the same evidence and legal issues. As such, we will address these issues together.